IN THE

## COURT FOR THE CORRECTION OF ERRORS

OF THE

## STATE OF NEW-YORK.

---

Argued in September and October, and decided in December, 1830.

---

### Astor, *appellant*, and Hoyt and others, *respondents*.

Where a part *leasehold property* in the city of New-York, subject to a mort-gage, is taken for a *street* by the corporation, and a sum of money is allow-ed by way of *loss* or *damage* to the mortgagor by the commissioners of es-timate, the mortgagee is entitled *prima facie* to so much of the sum assess-ed as damage as may be considered the substitute *of that part* of the prem-ises appropriated to public use.

If the mortgagee claims the *substitute*, he becomes liable as *assignee* to the lessor for a rateable proportion of an assessment imposed upon the residue of the demised premises for *benefit* to the lessor arising from the opening of the street, in case the mortgagor as lessee has bound himself to pay all assessments imposed upon the demised premises.

A *mortgagor* is the owner of the property mortgaged, against all the world, subject only to the lien of the mortgagee.

A *mortgagee* of a *term* not in possession cannot be considered as an assignee; but if he takes possession of the mortgaged premises, he has the estate *cum onere*.

A covenant to pay assessments runs with the land, and if broken *when* the mortgagee enters, the lessor has his remedy *in rem* to enforce the cove-nant, but cannot proceed against the assignee personally; if the land has been converted into money, the lessor may claim the same in chancery in satisfaction of the damages sustained by the breach of the covenant.

APPEAL from chancery. In 1821, Astor leased *Vauxhall garden*, in the city of New-York, to one Timothy Madden, for the term of 14 years from the 1st May, 1825, reserving an annual rent of $750; Madden engaging to pay all as-

sessments imposed on the premises under the authority of the state or general government, or of the corporation of New-York. In May, 1825, the corporation of New-York commenced proceedings for the opening of a public street or place called *La Fayette Place*, in the execution of which a part of the premises demised to Madden were taken. The commissioners of estimate and assessment estimated the *benefit* to Astor from the opening of *La Fayette Place*, by reason of his interest in the demised premises *not taken*, at $4447, and assessed the *loss* or *damage* to Madden in consequence of the relinquishment by him of his interest in the premises *taken* for the street or place at $5,700. In May, 1826, the report of the commissioners was confirmed by the supreme court. Astor claimed that the assessment imposed upon him should be paid by Madden according to the terms of the lease, or that he should authorize him to receive from the corporation, out of the sum assessed to Madden, sufficient to discharge the sum assessed against him, (Astor,) which Madden refusing to do, Astor, in June, 1826, filed his bill in chancery, alleging the above facts and that Madden was in embarrassed circumstances, and praying an injunction restraining the corporation of New-York from paying to Madden the sum assessed in his favor. An injunction accordingly issued, which was subsequently modified by allowing the payment of $1253 to Madden, being the difference between the sum to be paid by Astor and the sum to be paid to Madden. Madden died, and administration of his estate was granted to the *public administrator*, who, and the corporation of the city, put in their answers, submitting themselves to the direction of the court. The cause was heard on bill and answer by Chancellor *Jones*, who, in October, 1827, decreed that Madden was bound by his covenant to pay the assessment, and that his estate was chargeable therewith ; but that Astor had no lien upon the assessment, and was not entitled to priority of payment out of the same. The chancellor further ordered a reference to a master to state an account of what was due in respect of the assessment and an account of the personal estate of Madden, and that the assessment be paid in a course of administration ; adding, that the complainant might

insist before the master upon any right or claim of preference or priority of payment of the assessment, whether arising under the lease or otherwise, out of the fund in the hands of the corporation; and in case he should establish such right or claim by competent proof to the satisfaction of the master, that then the master should so report, with the reasons and grounds of his opinion in the premises. The chancellor also directed the master by advertisement to call upon all the creditors of Madden to come in and prove their debts before him by a certain day, and to report, &c.

In May, 1829, the master reported that divers persons, creditors of Madden, had appeared before him and proved their demands; that amongst them, *Moses Hoyt* had exhibited a mortgage of the premises demised to Madden, executed by Madden to him on 25th August, 1824, to secure the payment of $3469,19, which mortgage wss assigned by Hoyt to the Mechanic Fire Insurance Company of New-York as security for a loan made to Hoyt, and under which a specific lien was claimed by the parties holding the same upon the fund in court and a preference in payment, the amount due being $4602; also, that in October, 1826, all the interest of Madden in the demised premises had been sold under an execution on a judgment subsequent to the above mortgage, and purchased by a Mrs. Ehrick, who, in February, 1828, conveyed her interest in the *premises which remained* after opening La Fayette place to A. Divver, for the consideration of $523,25, and on the same day, Hoyt and the insurance company, in consideration of one dollar, released to him all their interest *in that part* of the demised premises. In September, 1828, Divver sold to J. Hunt, who, in the following month, conveyed the premises to Astor. It also appeared that Astor had regularly received his rent for the leasehold premises, from the wife of Madden up to December, 1827. The master further reported, that besides the sum reported by the commissioners of estimate and assessment in favor of Madden, the latter had left no personal estate; that such sum, after deducting costs, &c. amounted to $3888,28, which was paid into court; and that, in his opinion, the complainant had a right of preference or priority

of payment out of the fund in court. Hoyt and the insurance company excepted to the report of the master, and the cause having been heard on the exceptions by Chancellor *Walworth*, he in April, 1830, overruled so much of the master's report as related to the complainant's right of *prior claim* upon the fund in court, and decreed that Hoyt and the insurance company were entitled to the fund in court, in satisfaction of their mortgage, and ordered the payment of the same to them. From this decree, Astor appealed. For the reasons of the decree of the chancellor, see 2 *Paige*, 68, where this cause is entitled *Astor* v. *Miller and others*.

The cause was argued by

*D. B. Ogden*, for the appellant.

*P. A. Cowdrey*, and *D. T. Blake*, for respondents.

The following opinion was delivered:

By Chief Justice SAVAGE. Before I proceed to discuss the points raised in this cause, I will refer to the statute under which the proceedings were had, by which the fund in controversy was created, to see what aid can be drawn from that quarter in coming to a correct conclusion.

By the 177th section of the act to reduce several laws relating particularly to the city of New-York into one act, 2 *R. L.* 408, power is given to the corporation under certain circumstances, to open new streets; the land required for the purpose may be taken, and compensation is required to be made to those whose loss and damage shall exceed the benefit. Commissioners appointed by the supreme court are to make a just and equitable estimate and assessment of the loss and damage, if any, over and above the benefit and advantage, or of the benefit and advantage over and above the loss and damage, as the case may be, to the respective owners, lessees, parties and persons respectively entitled unto or interested in the premises, and to report to the supreme court without delay. In making such estimate and report, the commissioners are to insert the excess and surplus only of loss and damage when it exceeds the benefit and advan-

tage ; where the damage and benefit will be equal, they are so to report; and where the benefit exceeds the damage, they are to report the excess of benefit over the damage. Upon the coming in of the report, parties interested may make their objections, and the supreme court must either confirm the report or refer it back, and when confirmed, it is final and conclusive upon the parties interested. The 181st section, p. 407, provides that where the whole of any lot under lease or other contract shall be taken, all the covenants, contracts and engagements between landlord and tenant, or any other contracting parties upon confirmation of the report, shall cease, determine and be absolutely discharged; and where a part only shall be taken, all contracts and engagements respecting the same, shall, upon confirmation-of the report, cease, determine and be absolutely discharged as to the part so taken, but shall remain valid and obligatory as to the residue thereof; the rents, &c. to be apportioned. It is also made the duty of the commissioners to consider the different interests of different persons in the same premises.

Madden, the tenant of Astor, had a lease for 14 years of a garden, and was bound to occupy it as a gardon, and nothing else; he was obligated to pay $750 rent at all events, and to pay all assessments for opening streets through his garden, thereby destroying the property for the only use to which he could apply it. It is manifest, therefore, that his damage must be great in consequence of running the street through his garden : but it would be no damage to Astor; he was to receive his rent during the term. The property would then be returned to him with a street running through it, and instead of a garden he would have a great number of building lots, with the street already made at the expense of Madden, whose interest was destroyed by it. Yet Astor sets forth in his bill, and his counsel pressed it upon the argument, that if Astor had been in possession of the whole premises, and no lease had been given, he would have had money to receive instead of paying it out, because, says the counsel, the two assessments are both made on the same premises. But is it not manifest that the improvement ben-

efitted the landlord while it ruined the tenant? Madden could not improve the premises as a garden, with a street running through them, and this was considered, no doubt, by the commissioners. On the contrary, the property was rendered more valuable to Astor by presenting him on both sides of the new street several hundred feet of front, which he could now build upon or sell to advantage, and which were comparatively of trifling value to him without the new street. From my knowledge of the principles upon which such assessments are made, the commissioners must have been of opinion that Astor's benefit, to be enjoyed 14 years thereafter, was worth *in presenti* the amount of the assessment; then, if Astor had possessed the whole estate, the question would be this: If the present value of a benefit to be enjoyed 14 years hence be $4447, what would it be worth, if to be enjoyed immediately? Is it not apparent that it would be more than doubled, perhaps quadrupled? Suppose, when the assessment was made he wished to sell the lots, he could not give possession for 14 years; if he wished to build upon them he could not do it till the lease had expired—whereas, if in possession when the improvement was made, he could enjoy these advantages. If the interest of the landlord and tenant were the same, and would be similarly affected by the improvement, then there would be some plausibility in the argument for the appellant; but where those interests are directly opposite, the argument fails.

Again; suppose a street to be laid out through a block of ground upon which there are no buildings, as was the case here, the ground necessary for the street must be paid for, and the street must be pitched and paved; and I ask at whose expense? The statute gives the answer; the expense is assessed upon the lots fronting upon the new street, and upon ground extending to half the distance of the next street. Is it not manifest then, that where one man owns all the land taken for the street, and all the lots fronting on that street extending to the half distance, that such owner must give the land for the street, and pitch and pave the street at his own expense? And yet, Astor says, in such a case he would have had money to receive, and not to pay, in consequence of

the improvement. Where, I would ask, was the money to come from which Astor was to receive after having a street made for him free of expense? The statement of the case shews the futility of the claim.

This allegation in the bill constitutes the only ground upon which a claim to this specific sum can be pretended ; and but for this allegation the chancellor might have sent the complainant into a court of law to assess his damages for a breach of the covenant. Chancellor Jones decided, "that the complainant had not shewn any sufficient equity on the pleadings to entitle him as against Madden, the lessee, to charge the assessment upon the allowance to Madden for his loss and damage in the premises, or to any priority of payment of the said assessment out of the said allowance."

There is another view of this case arising solely out of the statute. It is this: The piece of ground taken for the street is put beyond the reach of all contracts of its former owner or possessor. Suppose leases, mortgages or judgments to exist, covering this piece of property, they cannot control it. A sale on a mortgage or judgment would be futile. Nor can the lessee claim possession under his lease ; it must be appropriated to the public for a street ; and it is discharged from all covenants previously connected with it ; but covenants and contracts respecting the remainder of the premises remain in force. Madden remained liable upon his covenant to pay the assessment upon Astor, but it could not be enforced against this property as it might upon the residue of the premises. Suppose a judgment or decree in favor of Astor against Madden for the amount of the assessment, Madden's interest in the remainder of the premises might be sold, but not the part taken for the street. So, also, as Chancellor Walworth has said, the remaining premises, if assigned, would be subject in the hands of the assignee to the payment, and the assignee would be liable in respect of such portion as was assigned to him. Suppose no suit had been brought before the premises were assigned to Mr. Astor, would not his remedy have been gone ? merged ? Clearly it would, except against Madden or his representative ; because,

though as lessor he would be entitled to recover, yet, as assignee of the lessee, he would be bound to pay, the covenant running with the land. But he sued Madden, and revived the suit against his administrator, and obtained a decree before he re-purchased. The amount decreed for the assessment is therefore a debt against Madden's estate.

Again, in regard to the mortgage; it could not be enforced against the part taken but against the remainder, and that being released, the mortgage cannot strictly be enforced at all. Although such is the effect of that clause in the statute, which declares all premises taken for a street discharged of all rents and contracts, yet it should be equitably construed. It must be taken literally, no doubt, as to the land itself; but where there is an equivalent given for the land, equity and justice require that such equivalent should be applied to the discharge of liens upon such premises. Suppose a creditor by judgment or mortgage, whose lien is equal to the amount given for the land: it is just that he should have it. Suppose the premises to be leasehold, and that there are arrears of rent; though the landlord cannot distrain or re-enter, it is just that he should be paid out of the money allowed by way of loss or damage, and a court of equity is undoubtedly competent so to direct. It seems to me, that if in this case there was rent due the appellant, and he had no other mode of obtaining payment, a court of equity would order a proportionable part of the fund applied to the satisfaction of the rent. In one respect, I cannot distinguish between the appellant's right to the rent and his right to the assessment in question, though his bill does not so present it. The lease gave him the same remedy for it, as for the rent by way of re-entry. This remedy is taken away by the statute, but it is equitable that he should be satisfied out of the fund so far as it extends, and so far as the premises taken were originally liable. Even at law, I do not understand that the remedy is gone for rent accrued, or other right of action arising before the confirmation of the report of the commissioners of estimate and assessment, or simultaneous therewith. The lessee remains liable upon his covenants broken before that time, and the assignee also. The covenant in this case was

broken at the very moment of the confirmation of the report. The damages assessed upon Astor not being paid, he had a right of action upon Madden's covenant. The assignees of all or any part are liable upon this covenant, and as well the assignees of the part taken for the street as of the residue. Where the statute says, all leases, contracts, &c. shall cease and determine, and be absolutely discharged, it has a prospective operation only. This statute, as has been already stated, declares, that where a part is taken, such part is discharged from all contracts, but the residue remains liable, "and the rents, considerations and payments reserved or payable, or to be paid for, or in respect to the same, shall be so apportioned as that the part thereof justly and equitably payable, or that ought to be paid for such said residue thereof and no more, shall be demanded or paid, or recoverable for or in respect of the same." According to this provision, if the premises remaining had continued in the hands of assignees other than Mr. Astor, the damages would be so apportioned that each part would be chargeable with an equitable proportion in relation to the whole premises originally liable, and no more; the whole assessment could not be collected from the assignees, but only a proportional part, deducting the street. For example : If the whole rents or other payments were $3000, and one third was taken for the street, the remaining two thirds would be liable for two thirds of that sum only, and not the whole sum. Without recourse to the part taken for the street or its substitute, Mr. Astor could not obtain his whole demand, but only a *pro rata* amount. He would recover from each assignee a sum bearing the same proportion to the whole sum due him from Madden which the premises in possession of each assignee bore to the whole demised premises.

How much then of the fund in court is to be considered the substitute of the premises taken for the street? The whole fund is not substituted for the strip of land taken for the street; it is not the value of it; it was not so stated or considered by the commissioners. The remaining property was rendered so much more valuable to Mr. Astor by $4447; and the remainder was rendered less valuable to Madden by

$5700. Suppose a trespasser had gone into the middle of Madden's garden, torn up his trees and shrubbery, and made a street through it, throwing it open, what would have been the measure of damages? not the value of the part torn up alone, but all the injury he sustained to his whole premises, street and all. So in this case, the use of the street is considered, and the damages assessed to him are as well for the ground taken as the deterioration of what remains. The assessment in favor of Madden is substituted not for the value of the street alone, but also for the damages sustained by him in the diminished and limited enjoyment of what remains. The utmost extent to which the doctrine of substitution is applicable, is to that part of the mortgaged premises which has been taken for the street. If the report of the commissioners shews the value of Madden's interest in that part, then so much of the $5700 should be considered the substituted fund; if not, the whole sum should be apportioned according to the quantity of ground in the demised premises, and such rateable proportion be considered the substituted fund as the part taken for the street bears to the remaining demised premises; and as the residue of the premises was released from the operation of the mortgage, there can be no specific claim upon the balance of the assessment by virtue of the mortgage. It constitutes so much assets in the hands of Madden's administrator, or in the court of chancery, and is to be disposed of in the course of administration. Mr. Hoyt's bond may perhaps be entitled to preference, if there are no debts of an higher nature. How that fact is does not appear; nor is it necessary that it should.

If I am correct in my views of this case, it will follow, 1. that Mr. Astor has shewn no equity in his bill entitling him to payment of his demand against Madden out of the assessment, and that, notwithstanding *his* claim as stated in his bill, the fund in court should go into the hands of the administrator, to be paid out by him and disposed of according to law; 2. that the mortgagees are entitled *prima facie*, by virtue of the mortgage, to so much of the fund as is equal to the value of Madden's interest in the *property taken for the street;* and that should be ascertained either by the report of the com-

missioners of estimate and assessment, or by taking a rateable proportion of the assessment, according to the quantity of ground taken, compared with the whole quantity covered by the mortgage ; and 3. that the residue of the premises having been released from the mortgage, the balance of the assessment must be disposed of in a due course of administration.

The question then arises, which was principally discussed upon the argument, is the mortgagee to be considered the assignee of the leasehold premises? and if so, is he liable to the payment of the damages for the breach of Madden's covenant ? That the covenant to pay all assessments is a covenant running with the land, there can be no doubt, 5 *Co.* 25 ; and that the assignee is liable for the breach of such a covenant, occurring while he is assignee, is equally clear : but whether the mortgagee is assignee, and if assignee, whether he is liable for breaches of the covenant before the assignment, are questions to be discussed. In England, I think it must be conceded to be settled, that where the mortgagor, by the form of the instrument, conveys or assigns by way of mortgage his whole estate, the mortgagee is considered, at law and in equity too, the assignee. We read, indeed, in some of the books, that though the mortgage purports to convey an estate defeasable by matter subsequent, yet that the courts of equity consider them, in their true intent, as mere securities for money ; but the decisions of the courts, both of law and equity, which are the highest evidence of what the law is, have generally considered mortgages as conveyances ; and by the mode of drawing them there, it seems necessary that when the condition is performed, there should be a re-conveyance or re-assignment. In *Sparkes* v. *Smith,* 2 *Vernon,* 275, the court refused to compel a mortgagee to disclose whether a lease was assigned to him, to enable the plaintiff to prosecute him as assignee upon the covenant of the lessee, who was also mortgagor ; clearly implying that as assignee of the whole term, even by way of mortgage, he would be liable ; and in *Pilkington* v. *Shaller,* 2 *Vern.* 374, where a recovery had been had in a similar case against the plaintiff as assignee, the court refused to relieve him, saying the mortga-

gee was ill advised to take an assignment for the whole term. In the case of *Eaton* v. *Jaques, Doug.* 460, the court of king's bench disregarded these cases and thought them not well considered. Lord Mansfield was of opinion that upon principle the assignee is liable only in respect of the possession, and that as a mortgage was a mere security, the mortgagee out of possession was not liable as assignee. About ten years afterwards, Lord Thurlow entertained a different opinion, and did what was refused in *Pilkington* v. *Shaller.* He compelled a person who had received a lease in deposit as security to take an assignment, that he might be prosecuted as assignee upon the covenant of the lessee to build an house. The question seems to have been finally and deliberately settled, in *Williams* v. *Bosanquet,* 1 *Brod. & Bing.* 72, by ten judges, overruling the doctrine of Lord Mansfield in *Eaton* v. *Jaques.* Dallas, Ch. J., in giving the decision of the court, states explicitly the grounds of the decision. He shews from authority that the lessee is liable for the rent whether he enter or not; he is liable by virtue of his lease; and he argues that the assignee is under the same liability, whether he takes an absolute assignment or only by way of security, for the lessee conveys by the assignment his whole interest, which the assignee takes; and as the lessee was liable before entry, so must the assignee be liable in like manner. In that case, he remarks, the assignment was of all the right, title and interest of the assignor; and so completely did the interest pass, that there was a covenant to re-assign upon payment of the money. The money was not paid before the day when, if not paid, the assignment was to become absolute; so that the case was that of an absolute assignment. He also held there was a privity of estate; for the acceptance of the assignment was equal to actual entry and privity of contract, because the contract was with the lessee and his assigns, and the defendants were such assigns; therefore the contract was between the lessor and assignee.

Chancellor Walworth considers the case of *Williams* v. *Bosanquet* as settling the principle in England that a mortgagee of leasehold premises, whether in possession or not, is liable upon the covenants as assignee; but he thinks such a

principle cannot prevail in this state, because we hold the mortgagor to be the true owner, and the mortgagee as having nothing but a chattel interest while out of possession. The counsel for the appellant insists, however, that in that respect there is no difference in the doctrine held in England and here; for Lord Mansfield said, in *The King* v. *St. Michaels, Doug.* 632, it was an affront to common sense to say the mortgagor is not the real owner. Such was indeed the doctrine of Lord Mansfield and of Buller, justice; but that is the very doctrine which is repudiated in *Williams* v. *Bosanquet.* Lord Mansfield asserts that the mortgagor is the real owner; not so, says Ch. J. Dallas, giving the opinion of the ten judges; the whole interest is assigned; it vests absolutely, and is not the less absolute because the assignor (the mortgagor) may entitle himself to a re-assignment. Unless, therefore, a man can be the real owner after he has parted with all his interest, the chancellor must be right in saying that the English doctrine of the ten judges is inapplicable here. If the law is the same here as in England, and the law there is that the mortgagee out of possession has the whole estate, then this court was in error in the case of *Waters* v. *Stewart,* 1 *Caines' Cas. in Err.* 47, where they decided that the equity of redemption remaining in the mortgagor was real estate, and liable to be sold on execution; and the supreme court were equally in error when they decided that the mortgagee out of possession had no interest which could be sold on execution, *Jackson* v. *Willard,* 4 *Johns. R.* 41; for if he had the whole estate, it certainly might be sold. It would seem, too, that *Powell* must have been under a great mistake when he stated that the mortgagor might levy a fine or suffer a common recovery; that he had an estate which descended to his heirs, and which he might devise by his will. *Powell on Mortgages,* 75, 76, 170.

Here, however, the mortgagor is the owner against all the world, subject only to the lien of the mortgagee. In *McIntyre* v. *Scott,* 8 *Johns. R.* 159, it was held that the mortgagee of a ship, out of possession, was not liable for supplies; and in *Runyan* v. *Mersereau,* 11 *Johns. R.* 538, the assignee of the mortgagor was permitted to maintain trespass against the

mortgagee after condition broken. The court conclude their opinion in that case by saying, "The light in which mortgages have been considered in order to be consistent, necessarily leads to the conclusion that the freehold must be considered in the plaintiff, and he of course is entitled to judgment. In that case the court rely on the doctrine of Lord Mansfield in *Eaton* v. *Jaques*, and to shew that the interest of the mortgagee is only a chattel interest, they refer to the well established principles that mortgages pass by a will not made with the solemnities of the statute, and that the assignment of the debt draws the land after it. In *Coles* v. *Coles*, 15 *Johns. R.* 320, Spencer, J. repeats the doctrine of *Runyan* v. *Mersereau*, and in that case it was decided that the wife might be endowed out of the equity of redemption. In *Hitchcock* v. *Harrington*, 6 *Johns. R.* 295, Kent, Ch. J. says of the mortgage, "We now regard the mortgage estate only for the benefit of the mortgagee and his assigns. As to the rest of the world, as long as it is not put in force, it is only a pledge or lien on the bond, with which they have no concern any further than not to disturb it." And in *Dickinson* v. *Jackson*, 6 *Cowen*, 147, we held that until default in payment of the money due by the mortgage, or some part thereof, and the termination of a notice to quit, the mortgagee has no right of entry as against the mortgagor, and cannot bring ejectment against him, though he may against the assignee of the mortgagor, the tenancy being broken by the assignment. It is too late for us now to retrace our steps and adopt the doctrine of *Williams* v. *Bosanquet*, even if it was correct. To recover against an assignee of the lessee, it must be averred and proved that all the right, title and interest of the lessee passed by assignment to the assignee. After these decisions, can we say that all the right, title and interest of the mortgagor has passed to the mortgagee out of possession? So far from it, we hold that the mortgagee, before foreclosure or the commencement of proceedings to foreclose, has but a chattel interest. It is perfectly clear, therefore, that a mortgagee of a term out of possession is not in this state to be considered the assignee. In England there must be a reconveyance or re-assignment; so say the court in *Williams*

ALBANY,
October, 1830.

Astor
v.
Hoyt.

v. *Bosanquet.* Here that is not necessary; the transfer of the debt transfers the mortgage; payment extinguishes the lien, and so does a tender. But if a mortgagee takes possession of the mortgaged premises lawfully, he must be then considered assignee, and the assignee must take the estate *cum onere.* When the mortgagee takes possession, he then has all the right, title and interest of the mortgagor; then he acquires and the mortgagor loses an estate liable to be sold on execution. He is therefore substituted in the place of the mortgagor, who was lessee, and therefore is assignee and liable as such.

If I am correct in the positions, that a portion of the fund in court is to be considered the representative of the premises taken for the street, and that the mortgagees, taking possession of either the premises or the substitute, became liable for such covenants as run with the land, and that this covenant to pay assessments is of that character, it seems to follow that the mortgagees in this case must be responsible for their proportion of the assessment, unless, as they allege, the breaches occurred previous to the assignment. The proposition is unquestionably true, that an assignee is not liable for breaches which have wholly accrued before the assignment. For instance, he is not personally liable for rent due before the assignment; no action of covenant will lie against him for such rent, as it will for rent accrued subsequent to the assignment, and before he conveys away the demised premises. But it does not follow from this doctrine that the landlord loses all remedy besides that which he has against the lessee. If he is entitled by law or by his lease to proceed *in rem* to recover his rent, the assignment does not affect that remedy. If he can distrain and re-enter for want of distress as against the lessee, he may do the same as against the assignee for rent accrued before the assignment; but where the remedy for the breach of the covenant is merely personal, then the assignee is not liable. Such were the cases of *Grescot* v. *Green*, 1 *Salk.* 199, and *Church-wardens, &c.* v. *Smith*, 3 *Burr.* 1271, and 1 *Black. R.* 351. In *Grescot* v. *Green*, the lessee had covenanted for

himself and his assigns, to re-build and finish an house within a particular time, and after the time expired the lessee assigned over the premises, the house not being built and finished according to the covenant. "*Et per Holt, Ch. J.* This covenant shall not bind the assignee, because it was broke before the assignment; *aliter* if broke after, as if lessee had assigned before the time expired." In the case of *The Church-wardens* v. *Smith,* the lessee had covenanted to pull down certain houses and build new ones within seven years. After the seven years expired he assigned to the defendant. The court were clearly against the plaintiff, who sued the assignee for this breach. Lord Mansfield said, the single question was whether an assignee is liable for a breach which he never committed, and it is certain that he is not. And Burrow makes Lord Mansfield add, this breach was committed before his time; *and this covenant does not run with the land.* I presume Lord Mansfield did not say that such covenant does not run with the land if assigned before broken, but only that a covenant broken before assignment does not run with the land. In the case before us, it is to be observed that there is no time specified as to the performance of this covenant; I do not see therefore why it does not continue and attach upon the premises in the hands of the assignee, like a covenant to repair, without any time being specified. The assignee is liable on a covenant to repair. If a lessee covenants to discharge the lessor, *de omnibus oneribus ordinariis et extraordinariis* and to repair the houses, an action lies against the assignee. *5 Co.* 25. The covenant to pay all assessments is in substance a covenant to indemnify the lessor, and until performance, there is a continual breach, and therefore the assignee is liable, though the first breach happened before the assignment.

The result of my opinion, then, upon the several points raised and discussed is as follows: 1. That as against Madden's estate, the appellant has shewn no equity entitling him to priority of payment out of the fund in court; he has shewn a legal demand against Madden the lessee and his assigns; 2. That the mortgagees are entitled *prima facie* to so much of the fund as may be considered the substitute of that part

of the premises taken from the operation of the mortgage, and appropriated to public use ; 3. That the covenant to pay assessments, is a covenant running with the land, and is binding upon the several assignees of the lessee in proportion to the quantity assigned to each ; 4. That a mortgagee out of possession is not assignee ; but in possession, he is assignee and liable as such ; 5. That an assignee is not liable for breaches accruing exclusively before the assignment, but that the covenant in this case is not such an one, but which attaches to all assignees of the demised premises ; 6. That the premises taken for the street, are discharged from all contracts in futuro, but that a portion of the fund in court should be considered in equity the substitute for the part so taken ; 7. That the mortgagees by taking such substitute, become liable as assignees for a rateable proportion of the assessment, and therefore it should be paid to the appellant.

I am therefore of opinion, that the decree of his honor the chancellor be so modified as to give to the appellant so much of the fund as shall be ascertained to be the substitute for the premises appropriated for the street ; that the cause be remitted to the court of chancery, with instructions to refer it to a master to ascertain what the amount of the substituted fund should be ; and that the balance of the money in court be applied in the due course of administration.

The following members of the court concurred in the opinion delivered by the Chief Justice, viz : Mr. Justice MARCY, and Senators ARMSTRONG, BOUGHTON, BRONSON, CONKLIN, HUBBARD, MATHER, McLEAN, McMARTIN, OLIVER, SHERMAN and WARREN—12.

The following members of the court were of opinion that the decree of the Chancellor ought to be affirmed, viz : Senaators ALLEN, DEITZ, ENOS, GERE, McCARTY, REXFORD, THROOP and WHEELER—8.

Whereupon, a decree was entered reversing the decree of his honor the chancellor, and the record was directed to be remitted with instructions, that there be a reference to a master, to ascertain how much of the fund in court is to be

considered the substitute for the portion of the mortgaged premises taken for the street called La Fayette place; and that the master report such sum to be the substitute which shall bear the same proportion to [the whole sum awarded in favor of Timothy Madden as the portion of the mortgaged premises taken for the street bears to the whole premises mortgaged; and that [the master further report according to the order of 18th April, 1828, the debts due by Madden, and the nature of the securities held by his creditors. And it was further decreed, that upon the coming in of the master's report, the chancellor should order the sum reported to be the substitute to be paid to the appellant, [after deducting the costs of both parties, and that the residue of the fund in court be disposed of in due course of administration.