## COFFIN *against* TALMAN.

Where a lease of real estate contains a covenant that at the expiration of the term the lessor should purchase at an appraisal the permanent improvements made by the lessee, and he then refuses to do it, the covenant is broken and the right of action attaches to the lessor.

Such breach however is not a continuous one, and one who after it becomes the assignee of the lessor with knowledge of it, does not take the land chargeable with the covenant.

This action was brought in the supreme court by the plaintiff as assignee of Gideon P. Hewett, against the defendant as assignee of the Poughkeepsie Silk Company, to compel the performance of covenants contained in a lease from the Poughkeepsie Silk Company to Hewett.

On the first of May, 1836, the Poughkeepsie Silk Company, by indenture, leased certain real estate in the village of Poughkeepsie to Hewett for ten years, at an annual rent of three hundred dollars, with the privilege of renewing the lease for a further term of ten years if the parties should mutually agree and fix the rent. The indenture then contained covenants " that if after the term of ten years should be ended, the parties should not be able to fix and determine the amount of rent to be paid by the lessee for the further term of ten years, then the lessors bound themselves, their successors and assigns, to purchase and receive from the lessee all and any improvements which should be put and placed on the premises by the lessee during the term, the value of which should be ascertained and fixed by three disinterested persons, one to be chosen by each of the parties to the indenture, who should choose a third person, the decision of which said three persons as to the value of said improvements when made, should be binding and conclusive between the parties, and that if at the expiration of the lease, the parties should not be able to agree and fix

SEL. IV.—59.

upon said rent for the further term of ten years, then the said lessee, upon the lessors' paying for the improvements as aforesaid, should peaceably and quietly surrender the possession of the premises." Hewett, the lessee, went immediately into possession and made erections and valuable improvements on the premises at an expense of nearly six thousand dollars, and occupied them until May 3, 1841, when he assigned his lease to the plaintiff. At the expiration of the term in the lease mentioned, on the first day of May, 1846, the plaintiff having paid all rent due upon the lease, gave notice to the Poughkeepsie Silk Company that he had selected Horace B. Potter as his appraiser under the lease, and required the Poughkeepsie Silk Company to select one, and to comply with the terms of the lease, and offered to comply with it upon his part. The Poughkeepsie Silk Company refused to do this. The defendant in this action was at the time the agent and principal director of the company, and the person upon whom the notice was served.

Subsequently to the making of the lease to Hewett, the Poughkeepsie Silk Company mortgaged the premises to the American Life Insurance and Trust Company. This mortgage was foreclosed after the first of May, 1846, but the plaintiff was not made a party to the foreclosure. Upon the sale, which took place in March, 1847, the defendant became the purchaser.

The cause was tried before a referee, who reported in favor of the plaintiff for $5073·22. The supreme court at a general term in the second district in November, 1851, reversed the judgment entered thereon, and gave judgment against the plaintiff, who appealed to this court.

*A. L. Jordan,* for appellant, insisted that the covenants upon which the plaintiff claimed the right to recover, were not within that class of cases where the covenants when broken are finally and conclusively broken, such as covenants of seizin, right to convey, ownership, &c. Strictly, such covenants never do run with the land, although some-

times spoken of as running with it. But that where the land or the use of it, which is the foundation of the covenant, passes to the assignee, if the covenant is one which may still be performed by the assignee, he is bound to perform it, although the day of performance may have passed, and the neglect to perform it is a criminal breach. (5 *Wend.* 603, 617, 618, *Astor* v. *Hoyt;* 1 *Smith's Leading Cases,* 111, *note.*)

*J. Thompson,* for respondent.

JOHNSON, J. If this is to be regarded as an action of covenant, or if the right of the plaintiff stands upon the same footing as it would in such an action, then, I think, he can not recover.

The covenant of the Poughkeepsie Silk Company, in terms binds them, their successors and assigns, to purchase and receive from the party of the second part (Gideon P. Hewitt,) all and any improvements which shall be put and placed on the premises by the party of the second part during the term. This covenant is to operate in case the parties can not agree upon the rent, for a new term, under a covenant which provides for a renewal for a second term of ten years, in case the parties shall agree upon the rent to be paid therefor.

As this covenant for renewal confers no right upon the parties, being rendered practically nugatory by the proviso above mentioned, the first covenant is merely equivalent to a covenant to purchase at the end of the term. Not relating to any thing upon the demised premises or parcel thereof, and in being at the time of the lease, and the assignee of the lessee not being named, the covenant does not run with the land, so as to enable the assignee of the lessee to maintain an action. (*Spencer's case,* 5 *Co.* 16.)

The covenant in this case is on the part of the successors and assigns of the lessors, and therefore as it relates to a thing to be done upon the land demised, though not in esse

at the time of the lease, the assignees of the lessors are bound.

It is laid down in *Platt on Leases,* (vol. 2, 401,) that covenants which being entered into by the lessee fall as charges on his assignee, will if entered into by the lessor, fall as charges on the grantee of the reversion. Under the second resolution in Spencer's case, (5 *Co.* 16 *a,*) there can be no question that this covenant, if made by the lessee naming his assigns, would run with the land, and so being entered into by the lessor, his assigns being named, it runs with the reversion, and binds the grantees of the lessor. *Gray* v. *Cuthbertson,* (4 *Doug.* 351; *S. C.* 2 *Ch.* 482,) recognizes this doctrine. It was covenant by lessee against lessor's assignees for not naming an appraiser under a covenant that at the end of the lease an appraisement should be made of all fruit trees, &c., then standing on the premises, planted by lessee, his assigns, &c., and that lessor, for himself, *his executors and administrators,* covenanted with lessee, his executors, administrators *and assigns,* to pay to him or them the appraised value. Lord Mansfield delivered the opinion of the court, and held that the plaintiff's right of action could not for a breach of this covenant be extended to an assignee, without his being named in the covenant, as the subject matter of it did not relate to a thing in esse at the time of the demise. It is true that this is not a determination of the very point in controversy in this case, but it is very near it, because it recognizes a general rule, broad enough to include this case, and then determines the case then in hand the other way, upon the ground that the facts did not bring it within the general rule, as the lessor's assigns were not named, although the lessee's assigns were. The breach in this case happened in the time of the lessor and before the grant of the reversion to the present defendant.

The obligation of the covenant was, at the end of the term to name an appraiser and to pay the appraised value. The lessors before the assignment were in default, and could

have been sued by the lessee for the same breach which is complained of in this case, and in that action the lessee might have recovered the whole value of the improvements. (*St. Saviours* v. *Smith*, 3 *Bur.* 1271; see also the cases cited and examined in *Beddoe's ex'r* v. *Wadsworth*, 21 *Wend.* 120; *Fish* v. *Folley*, 6 *Hill*, 54; *Stuyvesant* v. *New York*, 11 *Paige*, 414.)

In *Astor* v. *Hoyt*, (5 *Wend.* 603,) the Court of Errors held, in a case where part of leasehold premises, subject to a mortgage, were taken for a street, that the money awarded for the part so taken was in equity subject to the lien of the mortgage: that the mortgagee claiming this substitute became assignee of the lessee, and so bound by the lessee's covenant to pay assessments, and that although the assessment was payable before he became assignee, yet that the covenant to pay it was a continuing covenant, there being time of performance specified, and that until performance there was a continual breach. The covenant was put upon the ground of a covenant to repair where no time is fixed, on the authority of *the Dean and Chapter of Windsor's case*, (5 *Co.* 24 *a.*) That case, however, goes no further than to say that a covenant to repair binds the assignee, though not named, it appearing that the assignee suffered the premises to decay. So too in *Keeling* v. *Morrice*, (12 *Mod.* 371, case 620,) covenant was maintained against administrator of lessee's assignee for not repairing in the administrator's time. He was sued in his own name generally, and his liability was put on the same ground as upon a covenant to pay rent.

In short, although a covenant to repair is a continuing covenant, and so imposes an obligation to repair so often as occasion arises during the time, and notwithstanding prior breaches and recoveries therefor, (*Kingdon* v. *Nottle. Mau. & Sel.* 365,) I can not find any case in which the assignee of lessee has been held liable upon any breach of a covenant to repair for which the lessee might have been sued. Covenants to repair may, it is true, be so worded

as to render an assignee liable for allowing a ruinous condition of the demised premises to continue, although the lessee himself be liable for the same non repairs; but under such a covenant the continuance of the ruinous condition of the premises, in the time of the assignee, is the breach for which he is chargeable. The analagous case of grantee of reversion suing lessee for non repairs in the time of the lessor, was considered in Mascal's case. (1 *Leon.* 62.) Lessee covenanted to repair, and also that lessor might enter to view the state of repair, and if upon view premises were out of repair and warning thereof should be given to lessee, he, within four months should repair. The house became ruinous and then lessor granted over his reversion; grantee entered and gave warning to lessee to repair, and for non repairing in pursuance thereof, action was brought. It was argued that the action did not lie because the house became ruinous before plaintiff's interest in reversion. But the whole court were of opinion for the plaintiff because the action was not conceived upon the ruinous state of the premises, but for not repairing according to the covenant within four months after the warning.

Indeed, the case of *Astor* v. *Hoyt* can be hardly considered as maintaining any different rule, for the chief justice puts such a construction upon the covenant to pay assessments, as that the non payment amounts to what he calls a continual breach, by which I understand him to mean that it amounted to a breach of the assignee's obligation. This being held, the conclusion of the court follows well enough. On this view of the case, however, it does not at all amount to any authority which would sustain us in holding that the covenant in this case which provides for payment at the end of the term for buildings erected on the demised premises, is a continuing covenant, or that the non payment of the amount or failure to name an appraiser in order to ascertain the amount, is a " continual breach," for which the grantee of the reversion should be liable though it did not happen in his time. Of this covenant there coul¹.

Coffin *against* Talman.

be but one breach, and upon it the whole damage would be recoverable, so that the covenant would become extinguished. As the breach happened in the time of the Poughkeepsie Silk Company, and it was unquestionably liable for the whole value of the building, the defendant in this case is not liable.

If this view of the case is correct, there is no occasion to examine the question of the effect in equity of notice of covenants which do not run with the land. The doctrine of Lord Brougham in *Heppell* v. *Bailey*, (2 *Myl. & R.* 537,) has been questioned and shaken and perhaps overthrown by his learned successor Lord St. Leonards, (*Sug. on Ven.* 11th ed. 737, &c.,) but it will be time enough for us to settle the rule when the case shall be necessarily presented for our consideration.

The judgment below should be affirmed.

MASON, J., read a written opinion, in which he arrived at the same conclusion.

TAGGART, J., did not hear the argument

RUGGLES, Ch. J., gave no opinion.

Judgment affirmed.