All concurred, except HIRSCHBERG, P. J., who voted for affirmance, and HOOKER, J., taking no part.

Proceedings remitted to the commissioners for action in accord with the opinion of JENKS, J.

---

WILLIAM C. BOLTON, Respondent, *v.* THE SEAMEN'S BANK FOR SAVINGS and JOSEPH A. BURR and Others, Composing the Firm of BURR, COOMBS & WILSON, Appellants, Impleaded with JAMES BURKE, Defendant.

*Guaranty, in consideration of a property owner not opposing a street improvement, that the award to him would equal $4,000 — right to enforce the payment of the guaranty as between a mortgagee of the land taken and an assignee of the land-owner.*

February 28, 1899, a savings bank conveyed certain premises located at the corner of Clinton and Greene avenues, in the city of Brooklyn, to one Burke, taking back a purchase-money mortgage for $23,000. April 4, 1899, at which time there was pending in the Legislature a bill widening Clinton avenue, Burke, who had theretofore been opposed to the passage of the bill and who contemplated erecting an apartment house extending to the then existing line of the street, entered into an agreement with other owners of property bounded on Clinton avenue who were interested in securing the passage of the bill, by which, in consideration of Burke's withdrawing his opposition to the bill and constructing his building according to the new line of Clinton avenue as fixed

by the bill, they agreed that the award to be made to Burke, for his rights in the property to be taken in carrying out the improvement contemplated by the bill, should equal at least the sum of $4,000 over and above any assessment for benefit on said property.

The agreement contained the following clause: " The true intent and purpose being to cause that the said bill if enacted into law shall, within one year from the date it takes effect, produce for said Burke the sum of four thousand dollors and interest as aforesaid, and that the limitations or restrictions proposed by such bill shall be secured as to such land in case the said bill is enacted into law during the present year."

April 6, 1899, the bill referred to in the agreement became a law, and on May 3, 1899, Burke executed a second mortgage to the savings bank upon the premises for the sum of $37,000.   September 1, 1899, the city of New York instituted proceedings to condemn the land lying between the old and new lines of Clinton avenue.   January 25, 1901, the savings bank began an action to foreclose the two mortgages and bought in the premises at the foreclosure sale, which resulted in a deficiency judgment for $4,566.32.   January 30, 1903, an order confirming the report of the commissioners appointed in the condemnation proceeding was entered, which report awarded to the savings bank the sum of $23.89 over and above the assessment.

In an action brought to determine the respective rights in the money which the owners of the property on Clinton avenue had agreed to pay Burke (to wit, the difference between $4,000 mentioned in the agreement and the $23.89 awarded to the savings bank over and above the assessment for benefit), of the savings bank and of a firm of attorneys who represented Burke in the condemnation proceedings and of one Bolton, to whom Burke had, on August 1, 1899, assigned the moneys which were to become due under his agreement with the owners of the property on Clinton avenue, it was

*Held,* that if the moneys paid pursuant to the terms of the agreement between Burke and the owners of property on Clinton avenue constituted a part of the award for the land taken in the condemnation proceedings, the savings bank would be entitled to the fund, but that, as such money did not constitute any part of the award, but was simply a payment which the property owners were willing to pay to Burke to secure the legislation which they were seeking, Burke's assignee was entitled to the entire amount of such moneys.

APPEAL by the defendants, The Seamen's Bank for Savings and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 18th day of January, 1904, upon the decision of the court rendered after a trial at the Kings County Special Term.

This action was originally brought by the plaintiff against William H. Nichols and others as defendants to recover a judgment for money damages upon a certain agreement made between the defendants and one James Burke, plaintiff's assignor.

During the pendency of the action the original defendants, Nichols and others, came into court and conceded their liability upon the said agreement and alleging that the appellants had presented claims to the moneys due upon the agreement, the amount of which was paid into court by the original defendants and the present appellants were substituted as defendants in their place. The action proceeded in equity for the distribution of the fund.

January 12, 1899, the Seamen's Bank for Savings was the owner of certain premises in the borough of Brooklyn, at the northwest corner of Clinton and Greene avenues, and contracted to convey the same to James Burke and to take back in part payment a purchase-money mortgage of $23,000, and thereafter to make to said Burke an additional building loan of $37,000, the said Burke to erect upon said property an apartment house of the character described in said contract.

February 28, 1899, the bank conveyed the premises to said Burke, who gave back to the bank a purchase-money mortgage for $23,000, and immediately proceeded to erect the apartment house described in said contract.

April 4, 1899, the said Burke entered into an agreement with Nichols and others, the original defendants in this action, who were also owners of property bounded on Clinton avenue. This agreement recites among other things that there is a bill pending in the Legislature providing for the improvement of Clinton avenue; that the said Nichols and others and the said James Burke are owners of property on Clinton avenue; that the said Burke has commenced to construct a building according to the new line of Clinton avenue as fixed by said bill, and has consented to withdraw all opposition to the said bill and to advocate its passage, and that the said Nichols and others agree in consideration thereof that the award to be made to the said Burke for his rights in the properties to be taken in carrying out the improvement contemplated by the said bill shall equal at least the sum of $4,000 over and above any assessment for benefit on said property.

April 6, 1899, the bill referred to became a law, being known as chapter 257 of the Laws of 1899.

On the 3d of May, 1899, the said Burke gave to the appellant, the Seamen's Bank, a building loan mortgage covering his said prem-

ises in the sum of $37,000, which amount was advanced by the bank to the said Burke from time to time thereafter as the building progressed.

On the 1st of August, 1899, the said Burke executed and delivered to the plaintiff an instrument purporting to assign to him the aforesaid agreement with Nichols and others and the money due or to grow due thereon.

On the 1st of September, 1899, the city of New York instituted proceedings for the condemnation of that portion of Clinton avenue lying between the old and new lines of the avenue.

On or prior to January 1, 1900, the said Burke completed the erection of the apartment house upon said premises according to his contract.

On the 25th of January, 1901, the appellant, the Seamen's Bank, began foreclosure of the two mortgages given to it by the said Burke.

On the 16th of May, 1901, the premises were sold under foreclosure to the bank. The sale resulted in a deficiency of $4,566.32.

On the 28th of May, 1901, the sheriff conveyed the premises to the bank.

On the 30th of January, 1903, the proceedings instituted by the city for the condemnation of the said strip of land were completed by the granting of an order confirming the report of the commissioners by which report there was awarded to the appellant, the Seamen's Bank, the sum of $23.89 over and above the assessment for benefit.

Messrs. Burr, Coombs & Wilson represented the said James Burke in the condemnation proceedings and claim the sum of $264 out of the fund in court. No question is made as to the value of their services.

*Edward E. Sprague,* for the appellant, the Seamen's Bank for Savings.

*Robert H. Wilson* [*Herman Joerg* with him on the brief], for the appellants Burr, Coombs & Wilson.

*Andrew F. Van Thun, Jr.,* for the respondent.

JENKS, J.:

The servitude was imposed by chapter 257 of the Laws of 1899. The bank became a mortgagee first on February 28, 1899. If the

servitude damaged the land, the security of the mortgagee was impaired, and any damages paid as compensation, plus the land thus burdened, represented the land before it was burdened. If the entire plot had been taken the damages would have represented the security, and a mortgagee would have been first considered in the application thereof. (*Bank of Auburn* v. *Roberts*, 44 N. Y. 192; *Utter* v. *Richmond*, 112 id. 610; *Astor* v. *Hoyt*, 5 Wend. 603; *Matter of John & Cherry Streets*, 19 id. 659.) That is, if all of the land remaining free of any servitude, covered by the mortgage, could not produce the mortgage debt, then the mortgagee could resort to the award to make up any deficiency. (*Home Insurance Company* v. *Smith*, 28 Hun, 296.) If the entire strip, instead of being bound by a servitude, had been absolutely taken, and thereby the security of the mortgagee had been impaired, it would seem but logical that such impairment should first be considered in the application of the award. And the reason of the rule would extend it in a degree to a case where there was but a servitude imposed upon the land. The security was changed. In place of the land originally mortgaged the mortgagee finally held it charged with the servitude. And the fact that there was an award for damages is evidence that the land was damaged, and, consequently, that the security was impaired. In *King* v. *Mayor* (102 N. Y. 171) the court, per FINCH, J., held that the right to such damages accrued the instant a road, closed by proceedings, ceased to be a public highway, and that when they were paid they related back to the original debt which accrued at that time, being akin to damages in trespass or a wrongful taking, although the trespass is legalized by legislative authority, with such damages for compensation. When this land was taken, in the sense that whenever the owner was restricted from building outside of the line laid down by the act, the debt accrued, and the damages, when paid, related back to it. But whether the land was burdened by the statute *ex proprio vigore*, or only by the proceedings instituted under it, in either event the defendant bank was then a mortgagee. If the land was taken *ex proprio vigore*, it was an incumbrancer perforce of the mortgage of February twenty-eighth. If the land was taken only by the proceedings under the statute, then it was an incumbrancer with the mortgage of May 3, 1899, as well. So far as an award represented the impairment of the secu-

rity, the mortgagee with his mortgage prior to the time of impairment would be entitled to the first application thereof, so far as it was required to repair the impairment. (Authorities *supra.* See, too, *Platt* v. *Bright,* 31 N. J. Eq. 81.) The award belongs to the defendant bank, and the mortgagor cannot complain, as it is an application to his debt.

But the fund in court is not the award in the eye of the law, in that it represents the legal compensation to the landowner for the servitude. The landowners upon this block sought legislation which should assure a uniform courtyard line throughout the block. Mr. Burke, the owner of a corner lot upon the block, stood in their way; *first,* presumably he could defeat the practical purpose of the bill if it became a law by beginning construction beyond the proposed line, and avail himself of the exception provided by section 2 of the bill; and, *second,* he was opposed to the bill. Therefore, these owners agreed, in consideration of his commencement of construction within the proposed line and his change from opposition to advocacy of the bill, that the award to be made under the condemnation authorized by the bill should equal the sum of $4,000 over any assessment for benefit, and that to this end they would pay the difference between the balance of award over assessment and such sum; and they further agreed that if such sum was not produced by such law through the condemnation thereby authorized within one year from the time it took effect, then they would pay such sum. In return they were to receive a paper enabling them to recoup themselves from the award and a paper limiting the use of said land to the line. The agreement finally provides: " The true intent and purpose being to cause that the said bill if enacted into law shall, within one year from the date it takes effect, produce for said Burke the sum of four thousand dollars and interest as aforesaid, and that the limitations or restrictions proposed by such bill shall be secured as to such land in case the said bill is enacted into law during the present year."

It is quite evident that the property owners were not seeking a courtyard covenant from Mr. Burke. They looked to the proposed statute to effect that restriction. The purpose of thus dealing with Mr. Burke was to prevent his frustration of the scheme, and to change his attitude from opposition to advocacy of the bill. The

whole agreement is conditional upon the bill becoming a law, so as to effect their scheme of a uniform court line. They took into consideration that there was to be an award, and the agreement was made conditional in that so much of the $4,000 as was gained from any award within one year should be credited as against their obligation, but they agreed that if the award within a year did not produce this sum they would pay such sum to Mr. Burke. It cannot be said that they underwrote the award in $4,000 to whomever it was payable, or that $4,000 represents the impairment of the land consequent upon the servitude. It is the sum which the property owners were willing to pay to Mr. Burke, the then owner of the property, that he should not defeat the bill by opposition or mar its scheme by construction.

Mr. Burke was under no obligation to the mortgagee to oppose the bill or to stand at gaze. So far as the record shows he was not guilty of any bad faith in the construction of his building within the proposed line. True, it was his ownership of the land which enabled him to strike this bargain, but he did not thereby impair the value of the land. In so far as the servitude impaired the land, the award represents compensation therefor. If he had made a covenant it might be contended that it ran with the land (*Winfield v. Henning*, 21 N. J. Eq. 188), but he was not required to make such covenant, nor did he do so. The bill so to speak was to impose the covenant if it became a law, and he simply agreed neither to oppose its passage nor to thwart its purpose.

The fallacy of the defendant is in regarding the money resultant from the agreement as if the award; when one represents what the property owners were willing to pay Burke to secure their object, and the other represents the compensation for the impairment by the servitude. The only connection between the two is that the property owners did not intend that Burke should receive a double payment from award and from them, and hence they provided for their reimbursement from the award on the supposition that Burke, as the owner, would finally be entitled to receive that award.

The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.