Southworth v. Van Pelt.

SAME TERM.   *Before the same Justices.*

SOUTHWORTH & McGRAW *vs.* VAN PELT.

A mortgagee may maintain an action on the case against the mortgagor, or a person claiming under him, for waste committed upon the mortgaged premises after forfeiture of the mortgage, and after a decree for the sale of the mortgaged premises has been obtained; where the mortgagor is insolvent, and the mortgaged premises are a slender security for the mortgage debt.

THIS was an action on the case in the nature of waste, and came up on a writ of error to the Tompkins common pleas, and on a bill of exceptions taken in that court upon the trial of the cause. The facts upon which the defendant in error recovered a verdict, are as follows: On the 20th of May, 1840, Almeron Bailey and Elizabeth Bailey his wife, and William E. Bailey, being the owners of 119 acres of land, in the town of Dryden, in the county of Tompkins, executed a bond and mortgage upon the same to Harvey A. Rice, to secure the payment of $500. On the 10th day of August, 1842, Rice sold and assigned the bond and mortgage to the defendant in error, and afterwards, and before the commencement of this suit, he commenced proceedings in chancery to foreclose the mortgage. On the 26th day of August, 1844, a decree for the sale of the mortgaged premises was made, which was entered as of the

13th day of May, 1843, for the amount due on the mortgage, $604,30, and the costs of the foreclosure, amounting to $251,42. It appeared in the case that the land was an inadequate security for the amount of the decree, and that the mortgagors were insolvent. On the 4th day of September, 1844, Van Pelt caused the land to be advertised for sale by a master in chancery, for the 17th of October. On the 21st of April, 1842, the mortgagors conveyed the land to McGraw, one of the plaintiffs in error. The land was advertised for sale, and within a very few days of the sale McGraw, avowing that he would strip the land, drew off the fences, and cut down oak and chestnut trees, valuable for timber, and drew them off from the land, and employed many hands and teams to assist in expediting the work. The plaintiff in error, Southworth, assumed the charge of the hands, and assisted in cutting and drawing off the lumber, and when forbidden by Van Pelt, continued the work, and when other hands were going to quit he urged them on, and persuaded them to continue the work. The land was considerably lessened in value by this means, and when the master's sale took place, on the 17th of October, the land was sold for $575.

*B. F. Ferris*, for the plaintiffs in error.

*B. Johnson*, for the defendant in error.

*By the Court*, MASON, J. The first question to be considered is whether this action can be maintained, upon the plaintiffs' case. It was said upon the argument of the cause, by the counsel for the plaintiffs in error, that no adjudged case could be found where the mortgagee, or his assignee, had maintained this action against the mortgagor or his grantee in possession. And I am constrained to say, after a most faithful examination of the books, I have not been able to find any reported case where this action has been sustained. Neither have I been able to find a case where the courts have decided against the action. It was held in the case of *Peterson* v. *Clark*, (15 *John*. 205,) that the mortgagee not in possession,

could not maintain an action on the case in the nature of waste against the mortgagor in possession, before the forfeiture of the mortgage. But the court seem to have placed much stress upon the fact that the mortgage was not forfeited. The court say, in that case, " waste is an injury done to the inheritance, and the action of waste is given to him who has the inheritance in expectancy, in remainder or reversion. But it is expressly laid down by Blackstone, (3 *Bl. Com.* 225,) that he who hath the remainder for life only, is not entitled to sue for waste, since his interest may never perhaps come into possession, and then he has no injury. So likewise with respect to the mortgagor, especially when the mortgage is not forfeited, his interest in the land is contingent, and may be defeated by the payment of the money secured by the mortgage," &c. The doctrine of the courts in this state has always been that a mortgage upon real estate is but a chattel interest, and that the freehold remains in the mortgagor. (1 *John. Rep.* 534, 290. 15 *Id.* 319. 2 *Cowen,* 195.) And the doctrine of our courts, at the time of that decision, was, and until quite recently has ever been, that a tender after the pay day, was just as effectual to discharge the lien of the mortgage as a tender before. (*Jackson* v. *Crafts,* 18 *John.* 110. *Edwards* v. *The Farmers' Fire Ins. and Loan Company,* 21 *Wend.* 467. *Same case in error,* 26 *Id.* 541.) Admitting the principle which has ever been the doctrine of the courts in this state, that the mortgage is but a chattel interest, and that the estate in the land remains in the mortgagor, and the doctrine which prevailed in our courts at the time of that decision, that a tender after the pay day was as effectual to discharge the lien of the mortgage, as before, I do not see why the reasons assigned by the court in the case of *Peterson* v. *Clark,* (15 *John.* 205,) would not apply with as much force after the pay day of the mortgage had passed, as before. But the courts of this state have of late advanced a more rational and salutary doctrine upon this subject, by which the forfeiture of a mortgage is made to mean something. The chancellor held, in the case of *Merritt* v. *Lambert,* (7 *Paige,* 344,) that a tender after the pay day did not discharge the lien of the mort-

Southworth *v.* Van Pelt.

gage; and in the case of *Post* v. *Arnot*, (2 *Denio*, 344,) the court of dernier resort in this state, followed the chancellor and affirmed the same doctrine. We are therefore to regard it as settled, for the present at least, that there is a forfeiture after the pay day has past, and that the mortgagor can only acquire a free title by redeeming. This view of the case greatly strengthens the right of the plaintiff in the court below to recover; and it will be seen that the forfeiture does not amount to much if the mortgagee cannot maintain his action for waste; for his remedy by ejectment is cut off by our statute. (2 *R. S.* 312, § 57. 3 *Wend.* 485. 6 *Hill*, 143.) At common law the mortgagee had three remedies to obtain satisfaction of the mortgage debt. He could sue upon the bond; or he could obtain possession of the land by ejectment, and take the rents and profits of the lands until he was satisfied; or he could foreclose the equity of redemption of the mortgagor. (*Jackson* v. *Hull*, 10 *John.* 481.) It is true that the mortgagee cannot have ejectment to obtain possession of the land after forfeiture of the mortgage. Still, if he is in possession, he may defend himself under the mortgage, and it is said that a tenant of the mortgagor may attorn to the mortgagee. (20 *John.* 51.) It was also held in the case of *Van Duyne* v. *Thayre*, (14 *Wend.* 236,) that "the interest or estate of the mortgagee would descend to the heir, it being for the above purpose the legal estate." And that the heir takes the estate in trust for the personal representatives; and previous to the revised statutes, the heir might bring ejectment. Now that the mortgagee cannot get the possession of the land until he has foreclosed the equity of redemption of the mortgagor, I do not see that the forfeiture amounts to much, unless we permit him to maintain his action upon the case, for any waste of the premises which impairs his security. I am inclined to think that in the case of *Peterson* v. *Clark*, (*supra*,) the court did not show proper respect to the case of *Yates* v. *Joyce*, (11 *John.* 136.) In that case it was expressly decided that the assignee of a judgment, who had no other interest in the land than the lien of his judgment, for the security of his debt, could maintain this action against a person for wrongfully

taking down and removing a building upon the land on which the judgment was a lien, and converting it to his own use. And still it seems to me that all the reasons stated by the court in the case of *Peterson* v. *Clark*, against the recovery in that case, apply with full force to the case of *Yates* v. *Joyce*. The assignee of the judgment had not the inheritance, and he may never come into the possession of the land; for his interest may be defeated at any time by the payment of the judgment. It seems to me to be difficult to reconcile the two cases; and it strikes me as somewhat singular that in the case of *Peterson* v. *Clark*, the court did not so much as notice the case of *Yates* v. *Joyce*. I cannot but think the principle decided in the case of *Yates* v. *Joyce* is applicable to the present case. The mortgage is but a pledge or security, for the payment of the debt, and the estate of the mortgagee is a mere chattel interest. All this may be said of the judgment, and its lien upon the land, in the case of *Yates* v. *Joyce*. The plaintiff failed in the case of *Lane* v. *Hitchcock*, (14 *John.* 213,) in consequence of the insufficiency of his declaration and of his proof upon the trial. The court, in that case, seem to take it for granted that the plaintiff might have had his action upon the case for the waste complained of, if his declaration and proof had made such a case as the plaintiff in the court below made in the case at bar; and the author of Cowen's treatise upon justices' jurisdiction, has drawn this inference from the case. (1 *Cowen's Tr.* 310, 2d ed.) It was said, upon the argument of this cause, that the remedy of the defendant in error was by application to a court of equity to stay the waste and preserve the security to the mortgagee. This undoubtedly he may do, (*Bradrus* v. *Waldron*, 2 *John. Ch. Rep.* 148,) but I do not see the necessity of compelling the mortgagee, or his assignee, to go into a court of equity for this preventive remedy. Besides, in many cases that may arise, he may be entirely ignorant of the waste committed until his security is so far impaired that it would be of but little use to stay further waste by injunction. And the argument against the present action, that the books do not furnish a precedent for it, is not very strong. It was very properly

said, by the author of Cowen's Treatise, supra, in speaking of this action, that "this is a very comprehensive action to which no definite boundaries can be assigned. It embraces regions altogether unexplored by the law." And this view of the action is confirmed by going back to the origin and history of the action itself. It is said to be a junior action to debt, covenant, trespass, &c. and that it originated *ex necessitate* ; "that its origin is to be traced to the impracticability of even the most acute and sedulous jurist, defining the nature of every civil wrong which one member of the community can experience from another;" and that when a case arose not provided for by the then forms of action, the plaintiff was allowed to state such case to the court, and that the court permitted such plaintiff to have an action upon his own case. It is interesting to trace the history of this action, and mark its progress over so wide a field as it now occupies; and the author of Petersdorff's Abridgment of the English common law, in a note, has well defined the use of this action, in the following words : "Hence, when neither law nor practice has expressly and in terms defined the kind of remedy to be instituted for an injury, actions are daily brought on the case itself. That is only a legal and recognized form of statement of the injurious circumstances constituting or occasioning such claim to redress or compensation." And it is said in *Com. Dig. tit. Action upon the Case,* "*A,*" that "in all cases where a man has a temporal loss or damage by the wrong of another, he may have an action on the case to be repaired in damages." There is no doubt but the general principles which govern this action are applicable to the case made by the plaintiff in the court below; and that upon the facts appearing in the case, he was entitled to maintain his action. And I am satisfied that the court below, in the charge, correctly stated the law applicable to the case, and that the two decisions upon the trial, in relation to the evidence, were correct. There cannot be a doubt but that the law construes such wrongful acts as the plaintiffs in error are proved to have committed, a fraud upon the rights of the defendant in error, and which give him this action. The judgment of the court below must be affirmed.