### The Bank of Auburn vs. Lewis Roberts and others.

It is a rule in equity, arising from the doctrine of equitable conversion, that when land is taken for public use for canals, railroads, streets or otherwise, the money awarded for such land remains, and is to be considered, as land, in respect to all rights and interests relating thereto.

The money, in such cases, is deemed to represent the land, and is applied in equity to discharge the liens upon it, precisely in accordance with the legal or equitable rights of creditors or incumbrancers in respect to such land.

The act of the legislature, providing for the enlargement of the Erie canal, passed April 15, 1854, declared that nothing therein contained should authorize the canal board to abandon the existing canal through cities or incorporated villages. *Held*, that the act recognized a species of vested right on the part of persons who had made valuable erections and improvements in the cities and villages adjacent to the canal, to have the canal continued as then located. /

And that a change of the location of the canal through an incorporated village, by which property adjacent to the canal suffered damage, was a virtual appropriation of the property, in a qualified sense for public use.

The legislature, by the act of April 2, 1858, authorized all that portion of the old Erie canal lying west of the Owasco outlet, in the village of Port Byron, &c. to be abandoned by the canal board; and directed such board to settle upon the damage to the mill property of B. & R. caused by such abandonment. The canal board, on the 28th of May, 1858, passed a resolution, declaring that the portion of the canal, above mentioned, was abandoned, and awarding to B. & R. the sum of $8000 in full for the damages to their mill property caused by such abandonment. *Held*, that the money so awarded was an equitable fund for the payment of the liens upon such mill property, and was a substitute for said property to pay the debts of B. & R.

Accordingly *held*, that the holders of a mortgage upon the mill property had a clear equitable lien upon the money so awarded, for the payment of the mortgage debt, after exhausting their legal lien upon the property.

And that such mortgagees had a right to follow a draft given for such damages by a canal commissioner on the auditor of the canal department, to B. & R. and the proceeds thereof, into the hands of parties who were not *bona fide* holders thereof, except as to a small part, but received the same from B. & R. in payment of an antecedent debt, and with notice of all the facts.

APPEAL by the defendants from a judgment entered upon the report of a referee. The action was brought against Edward Bradfield and Henry Roberts, for the foreclosure of a mortgage given by them. Lewis Roberts, Addison F. Roberts and G. W. Burbank, partners composing the firm of L. Roberts & Co. were joined as defendants, and were sought to be

charged with the deficiency, if any there should be, on the sale of the premises. The referee found the following facts : That the defendants, Edward Bradfield and Henry Roberts, made, executed and delivered to the plaintiffs the bond and mortgage set forth and described in the complaint in this action, at the time, and in the terms, and upon the conditions therein set forth. That by the terms thereof, the whole amount secured thereby became due and payable on the first day of April, 1861. That the annual installments were paid thereon up to and including the payment due on the first day of April, 1857, since which time no payments have been made thereon. That there is now due and unpaid upon said bond and mortgage, the sum of $8333.34 of principal, with the interest thereon from the first day of April, 1857, and that the whole amount of principal and interest due and unpaid at the date of the report, was $11,609.72. That the bond and mortgage were given to secure a portion of the purchase money of the mortgaged premises. That the defendants, Lewis Roberts, Addison F. Roberts and Gideon W. Burbank, were junior mortgagees of said premises. That in September, 1857, the mill and storehouse upon said property were destroyed by fire. That they were insured by the said L. Roberts & Co. the subsequent mortgagees, in the sum of $15,000, which sum was paid to them by the insurers. That the said mortgagors became insolvent about the time of said fire, and before the first day of April, 1858, and their insolvency was known to the said L. Roberts & Co. who were commission merchants and partners in business in the city of New York, and did the business in New York of Bradfield & Roberts, and were well acquainted with their affairs. That on the second day of April, 1858, the legislature of the state of New York passed an act entitled "An act to provide for the abandonment of the old canal lying west of the Owasco outlet, and east of lock number fifty-two, in the village of Port Byron, and the payment of damages caused by such abandonment." (*Laws of* 1858, *chap.* 87.) That the mill

property referred to in said act is the same property described in and covered by the mortgage in this action. That on the 22d day of April, the plaintiffs gave notice to the defendant Benton of their claim, substantially as set forth in the complaint which was filed in his office. That on the 28th day of May, 1858, the canal board of the state of New York passed the resolution, a copy of which is set forth in said complaint. That resolution is as follows :

"*Resolved*, That the portion of the old Erie canal lying west of the Owasco outlet, and east of lock No. 52, in the village of Port Byron, be, and the same is hereby abandoned, and that there be paid to Edward Bradfield and Henry Roberts the sum of eight thousand dollars, in full for the damages caused by such abandonment to the mill property situate upon said canal, in pursuance of chapter 87 of the Laws of 1858, the release mentioned in the statute having been filed in the canal department."

That on the 31st day of May, 1858, said auditor of the canal department delivered to the agent of Bradfield and Roberts, a draft for the damages referred to in said act and resolution, for the sum of $8000. That on or before the 16th day of June, 1858, the defendant, Henry Roberts, delivered the said draft to the said Lewis Roberts & Co. indorsed by him with the names of said Bradfield and Roberts, and that said Lewis Roberts & Co. sold said draft through their broker, and received the proceeds thereof. That they had advanced to one Daniel P. Wood, and one Woolson, the sum of $1750, for which sum they held the draft as security, and they gave credit on their books to said Bradfield and Roberts for an antecedent debt owing by them to L. Roberts & Co. That while the said L. Roberts & Co. held said draft, or the proceeds thereof, George Underwood, on behalf of the plaintiffs, and as their agent and attorney, demanded said draft of said L. Roberts & Co. and at the same time offered to pay to them the sum of $1750, which demand and offer were refused, and thereupon this action was commenced.

The referee found the following conclusions of law, viz:

1. That the plaintiffs were entitled to the ordinary decree of foreclosure and sale of the mortgaged premises, and a judgment against the mortgagors personally for any deficiency of the proceeds of the sale to pay the decree with interest and costs.

2. That the plaintiffs had an equitable lien upon the said draft and its proceeds, to satisfy any deficiency upon a sale of the mortgaged premises to pay the amount due thereon, and had a right to follow said draft and proceeds in the hands of said defendants, Lewis Roberts & Co. subject to their advances thereon to pay said Wood and Woolson said sum of $1750. And that in addition to the ordinary decree of sale, the plaintiffs were entitled to a judgment that the defendants, Lewis Roberts, Addison F. Roberts and Gideon W. Burbank, pay any deficiency upon said sale to the amount of said draft and interest, less the $1750 advanced thereon by them.

And he directed a judgment for the plaintiffs accordingly, with costs against all the defendants, except the said defendant Benton.

*Charles Tracy,* for the appellants. I. The Erie canal, adjoining the mortgaged premises, and the lands appropriated to that canal, were the absolute property of the state. (1 *R. S.* 226, § 52. *Laws of* 1817, *p.* 302. 4 *N. Y. Stat. at Large,* 226.) 1. Adjacent proprietors may derive various benefits from the canal, but they have no legal right or interest in it. The state does them no wrong, and disturbs none of their rights by closing the canal or devoting the canal lands to other uses. 2. It was not shown or alleged that the mortgagors had any right, by patent, or prescription, or otherwise, to claim an easement or servitude in the state's property, or to hold it as appurtenant to the mortgaged premises. 3. Indeed, no such servitude or easement in canal lands can arise under the constitution and laws of this state. (*Const.* 1822,

*art.* 7, § 10. *Const.* 1846, *art.* 7, § 6. *Rexford* v. *Knight,* 15 *Barb.* 643. *Wolfe* v. *Frost,* 4 *Sandf. Ch.* 72.)

II. The mortgage does not include or cover any pretended servitude, easement or appurtenance in the state's canal and lands. 1. The boundaries given are distinct, and by plain terms exclude the canal itself and all the canal lands. 2. The operations of milling upon the mortgaged premises did not use or touch the canal. It gave the mill no water power, and afforded no passage for the conducting away of water from the mill wheels. The mortgaged premises could be fully used without it, and the convenience of having a canal at hand, which the proprietors of these premises, like all other land owners in the vicinity, enjoyed, was in no sense property in them. (*Gould* v. *Hudson River Railroad Co.,* 6 *N. Y. Rep.* 522.) 3. If the mortgagors had held a grant from the state, entitling them to have the canal perpetually maintained at that point, such right would not pass as an appurtenance without a specific mention of it in the mortgage, because the canal was merely convenient but not directly necessary to the mill property. (*Angell on Watercourses, p.* 176, §§ 165, 166. *Touchstone,* 89. *Le Roy* v. *Platt,* 4 *Paige,* 77, 82.)

III. The abandonment by the state of that part of its own canal which was near the mortgaged premises, did not diminish or impair the property and rights which were incumbered by the mortgage, nor take away any thing which the mortgage was intended to give or did give to the mortgagee. 1. As already shown, no right or interest in the canal was covered by the mortgage. The parties to that indenture did not assume to grant or receive by means of it a servitude over the state's absolute property. 2. If the mortgage should be deemed to cover a right or appurtenant easement in the canal, no act of the state in abandoning the canal without the consent of the plaintiffs could impair their legal rights, and they could look to the state for full indemnity for the seizure of

their private property. (*Const. art.* 1, § 7. *Gardner* v. *Trustees of Newburgh*, 2 *John. Ch.* 162.)

IV. The provision in favor of Edward Bradfield and Henry Roberts, in the act of April 2, 1858, was a gratuity given to them personally, and upon a condition which they were to perform. 1. The change of the canal route authorized by that act did not involve any seizure or condemnation of the mill property or any part of it for the making of the new line of canal. It was simply an abandonment or disuse of the old canal. (*Radcliff's Ex'rs* v. *Mayor of Brooklyn*, 4 *N. Y. Rep.* 195, 206.) 2. The terms of the act show that the legislature did not deem it a taking of private property for public use. " The damages to the mill property of Edward Bradfield and Henry Roberts," refer to the losses of incidental conveniences of navigation, which had been of advantage to that property. The damages "caused by such abandonment," are not damages by cutting across the mill grounds, nor by trenching on the mill property itself, but by the mere discontinuance of conveniences which the state was not bound to continue. 3. The limit of the damages to $8000—"not exceeding the sum of $8000"—shows that the payment was not to be for a legal right taken away ; for, by the constitution, the proprietor of any property taken by the state is entitled to full compensation. 4. The condition imposed on Bradfield and Roberts was, that they should procure releases from other parties and file them in the canal department, which also was inconsistent with the idea of a payment to them of any thing legally due to them. 5. The whole intent of the act was to make a bestowal of $8000, partly to compensate Bradfield and Roberts for their private loss incidental to a great public measure, and partly to reward their diligence and expense in procuring releases from others; not to make them or such other parties good for the whole sum to which such incidental loss and such diligence and expense might amount. (*Ex parte Miller*, 2 *Hill*, 418.) 6. The payment to Bradfield and Roberts was intended by the act

for their personal benefit. They are named in the act. The award is to be to "them." If their assigns or their mortgagees, or any persons other than themselves, were to be the recipients, the act would have so expressed it. The legislature was not taking care of the Bank of Auburn, nor providing for a loss that institution might suffer by the possible burning of the mill, but was giving a partial relief to Bradfield and Roberts for a loss they might sustain by a change of canal route, which gave them no legal claim for compensation, and for the trouble and outlay of procuring releases. (*Vide Munsell* v. *Lewis,* 2 *Denio,* 226; *Laws of* 1836, *p.* 201; *Ex parte Miller,* 2 *Hill.* 418; *Danforth* v. *Suydam,* 4 *N. Y. Rep.* 66.)

V. The mortgage and the act of 1858, confer no right on the plaintiffs, as mortgagees, to claim the money awarded to Bradfield and Roberts; and the same can not be pursued by the plaintiff, under the mortgage, or by this action, into the hands of Bradfield and Roberts, or of the appellants, L. Roberts & Co. 1. The mortgage being no incumbrance on any thing which the state has taken away from the mortgaged premises, much less is it a lien on what the state has bestowed on Bradfield and Roberts. 2. If the money had been paid directly for damages to the mortgaged premises, the mortgagees would not be entitled to demand it. Mortgagees can not claim moneys paid by insurers for the loss of buildings by fire, nor moneys paid or due for rents of the property accrued before foreclosure, unless such insurance money or accrued rents are expressly covered by the mortgage. (*Carter* v. *Rockett,* 8 *Paige,* 437. *Astor* v. *Turner,* 11 *id.* 436.)

VI. Independently of the mortgage itself, there is no ground for the plaintiffs' claim on the appellants, L. Roberts & Co. for the money awarded. 1. The award and the voucher for it were never assigned, transferred or pledged to the plaintiffs. There is neither allegation, proof or finding to that effect. 2. Edward Bradfield and Henry Roberts, the joint owners of the draft given for the award, owed debts to other parties

than the plaintiffs, one of which was to the appellants, L. Roberts & Co. and another was to Wood and Woolson, for $1750, and the draft was pledged first to Wood for the last mentioned debt. 3. The joint payees and owners of the draft, Edward Bradfield and Henry Roberts, never agreed between themselves to pay any of the proceeds to the plaintiffs, unless it might be one installment of $2083.33 ; nor had either one of them pledged any part of it to them. 4. The indorsement of the draft with the names of both the payees by the hand of one of them, was sufficient for the protection of L. Roberts & Co. and gave them a perfect title to it. Bradfield and Henry Roberts had been in partnership in the milling business, on these same premises. Their partnership debts were unpaid. Either one of them had a right to appropriate this joint asset to the payment of their joint debts. (*Mabbett* v. *White*, 12 *N. Y. Rep.* 442.) 5. Upon that indorsement the draft had been passed to Wood to cover his and Woolson's debt of $1750, before the transfer to L. Roberts & Co. and the latter firm took it from the hands of Wood, the actual and legal holder. The draft was finally paid upon that same indorsement. L. Roberts & Co. took the draft on the faith of that indorsement and pledge ; advanced the $1750, and placed the draft in the hands of a broker for sale ; and on receiving the proceeds, reimbursed themselves the $1750, and applied the residue on their own debt against Bradfield and Roberts.

*Cox & Avery,* for the respondents. I. The abandonment of the canal *impaired the value* of the site, and diminished the plaintiffs' *security.* (*Ch.* 743 *of Acts of* 1857, § 3.)

II. The award was made to *compensate such damages,* and was not a *gift* or *gratuity.* (*Laws of* 1857, *ch.* 743. *Id.* 1858, *ch.* 87. *Munsell* v. *Lewis,* 2 *Denio,* 226. *Danforth* v. *Suydam,* 4 *Comst.* 66.)

III. The starting point of the defendants' case is erroneous, in assuming, or struggling to represent, the plaintiffs'

equities in·this fund, as if they were now to be declared and enforced against the state. (17 *Wend.* 649. 13 *Barb.* 169. 16 *id.* 68. *Id.* 273.) 1. That is not the case; we have passed beyond that question. As between the owners of the mill property and the state, the question is closed, the damages sustained conceded estimated, and paid; and these parties (L. Roberts & Co.) have no right to litigate a question which has been adjusted by Bradfield and Roberts, *their assignors.* 2. This was the struggle in *Munsell* v. *Lewis,* 4 *Hill,* 635, (*and see remarks of Gardiner, P.* 2 *Denio,* 226.) But the court of errors looked at the equities intended by the statute, and decided the case without regard to the question whether *Munsell* could have *enforced* his claim against the state.

IV. These defendants' (L. R. & Co.) are in no sense *bona fide* holders of this fund. They had full notice and knowledge of the plaintiffs' equities; the condition and diminished value of the mill site, the insolvency of the mortgagors, the fire, the insurance money, the award and the grounds of it; and they *paid* or incurred nothing (beyond the $1750,) but *credited it* on their books on an antecedent debt of the mortgagors. This position is on all fours reversed, with *bona fide* holders. (8 *Cowen,* 361, 374. 1 *John. Ch.* 302. 3 *id.* 345. 10 *Peters,* 179, 211, 212. 6 *Seld.* 509, 528. 5 *id.* 548. *Story's Plead.* §§ 662, 806, 604, *a.*)

V. The plaintiffs' equities, as against L. Roberts & Co. are therefore the same as if this fund were still in the hands of the *mortgagors.* 1. These defendants have received with notice a considerable portion of our *security.* It is right that they should respond to the extent necessary to make that security good, within the amount of the portion in their hands. And this is the decree. Like the action for money had and received to the plaintiffs' use, the question is simply: to whom, and to what extent, does this fund, in equity and good conscience, belong? (*Buel* v. *Boughton,* 2 *Denio,* 91. *Munsell* v. *Lewis,* 2 *id.* 224. 4 *Bos. & Pull.* [*Day's ed.*]

263, *note.* *Moses* v. *Macferlan,* 2 *Burr.* 1005, 1012. *Norton* v. *Coons,* 3 *Denio,* 130.) 2. The *form* of the draft in question, and the statute on this subject, (*Laws of* 1841, *ch.* 160, § 5,) intended to protect our rights, deprive those defendants. of any color of equity in this case. Because :

VI. Our mortgage being for purchase money, we own the property, the defendants the equity of redemption, i. e. the balance, if any, after the mortgage.

| | | |
|---|---|---|
| Amount due on mortgage, | | $11,609 72 |
| Present value of premises, | $4,000 00 | |
| Deficit, doubtless, | 7,609 72 | |
| Amount of draft, | 8,000 00 | |
| Paid by defendants, | 1,750 00 | |
| | 6,250 00 | |

Interest to date of report, Nov. 12, 1862, say 1,932 29
Fund in defendants' hands, 8,182 29

This statement shows that B. & R. owned little or nothing in the property, at the time they got this draft.

VII. Stronger in every view than the case of *Munsell* v. *Lewis,* the judgment in this case stands on the plainest principles of equity, and should be affirmed with costs. In *Munsell* v. *Lewis,* no action of the state occasioned or aggravated the loss of the contractor ; here, otherwise. There, *Lewis* and *Weed* might reasonably call the fund *a gratuity ;* here the state confesses the fact of the damages, and the justice of the claim. There, the plaintiff got just what he bargained for, without the fund in question ; nothing was taken *from* him. Here, the plaintiffs have been deprived of what was theirs *ab origine* — the canal adjoining the mill.

*By the Court,* E. D. SMITH, J. The chief question upon this appeal is whether the plaintiffs have any lien, legal or equitable, upon the moneys awarded by the canal board to Bradfield and Roberts in and by the resolution of said board,

passed May 28, 1858. The cases referred to by the plaintiffs' counsel and upon which he relied to maintain the judgment of the referee, do not, so far as the facts of those cases are concerned, it seems to me, cover the case. They are the cases of *Danforth* v. *Suydam*, (4 *Comst.* 66,) and *Munsell* v. *Lewis*, (2 *Denio*, 226.) In the case of *Danforth* v. *Suydam*, the state had appropiated a mill lot for the enlargement of the Erie canal, and by the statute of limitations the provisions of the Revised Statutes limiting claims against the state to one year had attached. Notwithstanding this the legislature passed an act directing the canal appraisers upon the application of the *owners, their heirs or assigns,* to appraise the damages sustained by such *owners* from the appropriation of such land with others in the city of Rochester. Suydams had mortgages covering the mill lot in question, but before the passage of this act they had foreclosed such mortgages and bought in the property and had the legal title thereto, if a legal title could be acquired after such appropriation. They were held, under this act to be the legal owners of the property, by Vice Chancellor Whittlesey, who first decided the case, and by this court on appeal, in an opinion of Judge Maynard, and also finally by the Court of Appeals; and as such owners or assignees of the land, Suydams were held entitled to the money awarded by the state for the taking and appropriation of such land. This case stands upon this ground. In the case of *Munsell* v. *Lewis*, the act of the legislature provided that those contractors who entered into contracts for any part of the Chemung canal, at either of the three first lettings thereof, should be entitled to receive, on the completion of their respective jobs, such further sums beyond the contract price as the canal board should deem just and equitable, in consequence of the rise of the prices and value of forage and provisions and labor subsequent to the time of entering into such contracts respectively. Lewis, the defendant, was an original contractor within the terms of said act, but he sublet his contract to Munsell, who assumed his

responsibilities and completed the job.   The Court for the
Correction of Errors held very properly that the extra compen-
sation belonged to Munsell who did the work, and that he was
to be deemed the contractor intended by the legislature, within
the spirit and equity of the act.   In both these cases the
award was held to belong primarily, to the Suydams, in the
former case, and to Munsell in the other, by the terms of the
act.   This is not so in the case before us.   The plaintiffs
can not claim to be the original parties intended to be bene-
fited by the act of the legislature of April 2, 1858.   That
act was passed chiefly for the benefit of Bradfield and Rob-
erts, who had the legal title to the mill property in question.
The second section of the act expressly authorized and
directed the canal board "to settle upon the damages to the
mill property of Edward Bradfield and Henry Roberts, situ-
ated upon the said canal, caused by the abandonment of said
land, [as allowed in the 1st section of said act,] and to award
to *them* such sum as in the judgment of said board should be
just and equitable."   This is a provision to make compen-
sation to the said Bradfield and Roberts personally as the
owners of the mill property, for the injury done to such prop-
erty.   Very clearly, as it seems to me, the plaintiffs can not
claim the award by force of the terms of the act.   It does
not apply to them or include them.   But the plaintiffs were
mortgagees of this mill property, and the question which
remains, in this connection, is whether as such mortgagees they
have any lien upon or claim to such award.   If the state
had appropriated any part of the land covered by their mort-
gage, it could not cut off the lien of such mortgage by pay-
ment of the value of such land, or of the damages appraised
therefor, to Bradfield and Roberts.   As mortgagees, the plain-
tiffs could have claimed such money if the property should
not be of sufficient value to pay their debt, independently
of the portion thereof so appropriated.   It is, besides, a
rule in equity upon the doctrine of equitable conversion, that
when land is taken for public use, for canals, railroads, streets

or otherwise, the money awarded for such land remains, and is to be considered, as land in respect to all rights and interests relating thereto. The money in such cases is deemed to represent the land, and is applied in equity to discharge the liens upon it, precisely in accordance with the legal or equitable rights of creditors or incumbrancers in respect to such land. (*Astor* v. *Miller*, 2 *Paige*, 68. *Astor* v. *Hoyt*, 5 *Wend.* 610. *In the Matter of Cherry streets*, 19 *id.* 660.) But the state has taken no land covered by the plaintiffs' mortgage. It has made no appropriation of property, but has simply changed the location of a public work adjacent to the premises covered by the plaintiffs' mortgage. But while this is strictly so, and the damages which Bradfield and Roberts, or the property owned by them, sustained from such change of the location are purely consequential and could in no way be recovered without a special act of the legislature recognizing a right of compensation for such damages and giving and creating a tribunal for the ascertainment of the amount thereof, yet I think the change of the location of the Erie canal adjacent to these premises was a virtual appropriation of property, in a qualified sense, belonging to the said Bradfield and Roberts, and in which the plaintiffs had an equitable interest. Upon the construction of the Erie canal, cities and villages sprung up immediately upon its banks through its whole extent, and valuable buildings were erected and improvements were made in such cities and villages adjoining the said canal and connected therewith, and dependent thereupon for their chief value. The mill of Bradfield and Roberts, in Port Byron, was obviously one of such erections. The act providing for the enlargement of the Erie canal, passed April 15, 1854, section 7, declares as follows: "That nothing in this section shall authorize said board [the canal board] to abandon the present canal through cities or incorporated villages." This act recognizes a species of vested right on the part of the citizens who had made valuable erections and improvements in the cities or villages

of the state adjacent to the canal, to have the said canal continued as then located. The defendants, Bradfield and Roberts, purchased this mill and premises May 1, 1855, at $25,000, the mill having actually cost, as the plaintiffs' cashier testified, from $50,000 to $60,000. This mill was adjacent to the Erie canal. The referee finds that the canal was, in a limited sense, appurtenant to the mill property, and also that it (the canal) was directly necessary to the full enjoyment of the mill property. Such being the situation of this mill, the legislature passed the act of April 2, 1858, aforesaid, providing that all that portion of the old Erie canal lying west of the Owasco outlet in the village of Port Byron, and east of lock 52, might be abandoned by the canal board, and directing, in the 2d section above recited in part, said board "to settle upon the damage to the mill property of said Bradfield and Roberts caused by such abandonment." This was a distinct admission and recognition by the legislature of an equitable claim on the part of said Bradfield and Roberts, as the owners of said property, to compensation for such damages. It was not a gratuity. It was a provision for payment of a just claim arising out of the implied vested right in the canal, as then located, of the inhabitants of the cities and villages situate upon its banks, which the legislature conceded or recognized in the act of 1854, aforesaid. It was an acknowledgment by the legislature that said Bradfield and Roberts, as the owners of said property, were entitled to an equitable compensation for the damages to such property consequent upon the abandonment of that portion of the said canal adjacent thereto. The money advanced for such damages was a substitute for the valuable interest of the owners of said mill property in the canal as then located. It was to be a payment for the extinguishment of a privilege appurtenant to said canal and incident to said mill property as then situated, of much real and actual value, though not of such a character as property to be legally maintained and enforced. The abandonment of the canal at this place ex-

tinguished a property on the part of said mill owners of great value — a clear equitable property, not absolute and legal but as certainly just and equitable as against the state as if it had been created by grant or prescription. The $8000 awarded by the canal board to Bradfield and Roberts was for such equitable property — was to pay a just claim for its destruction, or the deprivation thereof, to the said mill property. It was just as much a substitute for equitable property as was the money awarded to Lewis, in the case of *Munsell* v. *Lewis,* for an equitable right to extra compensation. The latter was for work, services and expenses incurred. This for property destroyed and extinguished. The money awarded for this injury to the mill property of Bradfield and Roberts, is an equitable fund for the payment of the liens upon said mill property. It is a substitute for the said property to pay their debt. The fact that it was awarded to them does not change the plaintiffs' rights. They have a lien upon a fund which arises from the destruction of the property upon which they had a lien. If they had foreclosed their mortgage and sold the property before such allowance had been made, or the act therefor passed, it can not be doubted that they would have had an equitable claim upon the state to make up the deficiency within the limits of the actual depreciation of such mill property consequent upon the abandonment of the canal adjacent thereto. It would be like a case of waste to the injury of a mortgagee, who may maintain an action for the damages sustained thereby to the injury of his security when the mortgagor, as in this case, was insolvent and the security insufficient. (*Van Pelt* v. *McGraw,* 4 *Comst.* 110, *and* 3 *Barb.* 347 ) I think the plaintiffs had a clear equitable lien upon this award for the payment of the mortgage after exhausting their legal lien upon the said mill property. The defendants, L. Roberts & Co., are not *bona fide* holders of the draft given by the canal commissioners for the payment of the award. They were subsequent incumbrancers on the mill property, had received as such the $15,000

---

insurance money upon the mill, knew all the facts and advanced nothing upon the draft, except the sum of $1750 mentioned in the report of the referee and excepted in the judgment. The judgment rendered by the referee, I think, was right and should be affirmed.

[MONROE GENERAL TERM, December 4, 1865. *Welles, E. D. Smith, J. C. Smith* and *Johnson*, Justices.]