## COLMAN v. SHATTUCK.

*Taxation — sale of land for unpaid taxes — comptroller's deed — non-resident owner — what sufficient description of lands of — highway tax — supervisors' warrant — assessment roll — assessors' affidavit of verification — assessor not acting — certificate as to — presumption of performance of duty — excessive tax — slight error does not invalidate assessment.*

In an action to declare void a sale of lands of a non-resident owner, for the non-payment of taxes, it was objected that a highway tax was placed on the assessment roll, *back* of the supervisors' warrant, and was not covered by such warrant. *Held,* that the objection was not tenable. The supervisors' warrant cannot, in any case, refer to or command the collection of any tax levied on the land of a non-resident, and the statute requires only that it shall be *annexed* to the assessment roll.

It was also objected that the tax was back of the assessors' affidavit, and not verified by such affidavit. *Held,* that as the commissioners of highways made the assessment, which was placed on the roll after it had left the assessors, the assessors could not and were not required to verify it.

The lands assessed were designated as "Lot 54, town 1, range 3, 150 acres," on the assessment roll of the town of Portville. The lands were part of what are known as the Holland Land Company's lands, and the townships and ranges, which are accurately subdivided into lots, are recognized by the statutes of the State. *Held,* that the tract was sufficiently indicated, and all necessary particulars required by law given.

It was objected to the assessment on the roll of the State and county tax that the assessment of the lot was back of the assessors' affidavit of verification, and not covered by it. *Held,* that the affidavit verified the whole roll, wherever written, and was only required to be *on* the roll. Laws 1851, chap. 176, § 8.

The affidavit was made by only two assessors. *Held,* sufficient, and it was not necessary for the assessors to make the certificate (required by 1 R. S. 394, § 30) to the supervisors of the name of the non-acting assessor with the cause of his omission to act upon the roll or attach such a certificate to it. The statute is satisfied if such certificate is sent contemporaneously with the roll.

On the roll produced two entire leaves preceding the last one had been torn out. *Held,* that if it were necessary that the certificate should be on the roll, to support the comptroller's deed, it would be presumed to be on the leaves torn out.

Two of the returns of assessments, under which the lands were sold, were erroneous, one being three and the other five cents too much. *Held,* insufficient to invalidate the title acquired under the comptroller's deed.

APPEAL by plaintiff from a judgment dismissing the complaint in an action tried by the court without a jury.

The action was brought in Cattaraugus county, by Truman R. Colman against Edwin R. Shattuck and others, to set aside a deed from the comptroller, given after a sale for unpaid taxes, of certain lands to which plaintiff claimed title, as a cloud upon such title. All the necessary facts will be found in the opinion of Mr. Justice LAMONT.

*D. H. Bolles,* for appellant. No presumption exists in favor of the validity of an official act or its preliminaries, by which title is divested from one person and vested in another. *Jackson* v. *Shepard,* 7 Cow. 88; *Bunner* v. *Eastman,* 50 Barb. 639; *Varick* v. *Tallman,* 2 id. 113; *Striker* v. *Kelly,* 2 Den. 323; *Beekman* v. *Bigham,* 5 N. Y. 366. Every preliminary must be strictly complied with. *Rea* v. *McEachron,* 13 Wend. 456; *Ford* v. *Walsworth,* 15 id. 450; *Jackson* v. *Esty,* 7 id. 148; *Bloom* v. *Burdick,* 1 Hill, 141; *Atkins* v. *Kinnan,* 20 Wend. 241; *Sharp* v. *Speir,* 4 Hill, 76; *Sharp* v. *Johnson,* id. 92; *Adriance* v. *McCafferty,* 2 Robt. 153; *Tallman* v. *White,* 2 N. Y. 66; *Smith* v. *Randall,* 3 Hill, 495; *Van Rensselaer* v. *Witbeck,* 7 N. Y. 517; *Cruger* v. *Dougherty,* 1 Lans. 464; S. C., 43 N. Y. 107; *Hopkins* v. *Mason,* 61 Barb. 469; *Matter of Ford's Petition,* 6 Lans. 92; *Curtis* v. *Follett,* 15 Barb. 337; *Westfall* v. *Preston,* 49 N. Y. 549; *Westbrook* v. *Willey,* 47 id. 457; *In re Douglass,* 46 id. 42; *Doughty* v. *Hope,* 3 Den. 594; *National Bank of Chemung* v. *City of Elmira,* 53 N. Y. 49. The statutory presumption in favor of a comptroller's deed is not to be extended to any act not clearly included in it; and when non-compliance with statutory requirements is shown, the presumption is overcome and shifted. *Striker* v. *Kelly, supra; Beekman* v. *Bigham,* 5 N. Y. 366; *Newell* v. *Wheeler,* 48 N. Y. 486; *Graves* v. *Bruen,* 11 Ill. 431; *Sibley* v. *Smith,* 2 Mich. 486; Blackwell on Tax Titles, 365; *Johnson* v. *Elwood,* 53 N. Y. 431. This land was sold for arrearage of taxes for several years. If the tax of any year was void, the sale was void. Blackwell on Tax Titles, 280; *Hayden* v. *Foster,* 13 Pick. 492; *Wallingford* v. *Fiske,* 24 Me. 386; *Elworth* v. *Shaw,* 1 Greenl. 335; *Torrey* v. *Milbury,* 21 Pick. 70; *Bangs* v. *Shaw,* 1 Mass. 188; *Drew* v. *Davis,* 10 Vt. 506; *Thurston* v. *Little,* 3 Mass. 429; *Dillingham* v. *Snow,* 5 id. 547; *Stetson* v. *Kemper,* 13 id. 283; *Libby* v. *Burnham,* 15 id. 144; *McQuilken* v. *Doe,* 8 Black. 581; *Alvord* v. *Collin,* 20 Pick. 418; *Kemper* v. *McClelland,* 19 Ohio, 324; *Lacey* v. *Davis,* 4 Mich. 140; *Hardenburg* v. *Kidd,* 10 Cal. 402.

The same principle applies where the tax is returned for an excessive sum, and the land sold for that sum. *Ritter* v. *Worth*, 1 N. Y. Sup. 406; *Hase* v. *Merriam*, 2 Greene, 375. The highway tax was void. 1 R. S. 509, §§ 33, 34; 511, §§ 47, 49, 50; 1 Greenl. Ev., §§ 20, 40, 78; *Hall* v. *Kellogg*, 16 Mich. 135; *Johnson* v. *Elwood*, *supra*. The defective verification nullified the roll of 1856 as to the general tax. *Van Rensselaer* v. *Witbeck*, *supra ; Bellinger* v. *Gray*, 51 N. Y. 610, 620; Laws 1845, chap. 180, § 32. The roll of 1858 is void as to non-residents, as failing to designate the tract of land. *Hubbell* v. *Weldon*, Hill & Den. 139; *Tallman* v. *White*, *supra; Perkins* v. *Dibble*, 10 Ohio, 433. *De minimis non curat lex* does not apply to this case. If any charge is in excess, the exercise of authority on the part of the comptroller is invalid. *Case* v. *Dean*, 16 Mich. 12.

*Champlain, Armstrong & Russell* and *A. G. Rice*, for respondents.

MULLIN, P. J. I have carefully examined the objections made by the appellant's counsel to the regularity of the proceedings in assessing the plaintiff's land, and in the sale and conveyance of the same for the taxes assessed on the same, and I am of the opinion that they were properly disposed of by the judge at the special term.

For the reasons assigned by him in his opinion the judgment should be affirmed, with costs.

[The following is the opinion above referred to] :

LAMONT, J. The object of this action is to obtain a judgment declaring void defendants' title to real estate derived from a sale and conveyance made by the comptroller for non-payment of taxes, as a cloud on plaintiff's title, and to compel defendants to release, etc.

The land is lot 54, in township 1, range 3 of the Holland Land Company's lands (so called), situated in the town of Portville, Cattaraugus county, plaintiff's title to which is traced through divers mesne conveyances from the Holland Company, the first deed being dated in 1835. Defendants' title rests upon a deed from the comptroller after a sale of the same lot for unpaid taxes made in November, 1866, which deed was executed in December, 1868. Such conveyance by the comptroller is made by statute (Laws of 1855,

chap. 427, § 65) presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed to redeem, were regular according to the provisions of this act and all laws directing or requiring the same or in any manner relating thereto. The taxes in question were levied in 1856, 1858 and 1860, subsequent to the passage of the above act, and the defendants may therefore rest upon the legal presumption until it is overcome by proof to the contrary. The premises were assessed, returned and sold as the land of a non-resident, and the fact that it was non-resident land was admitted on the trial.

The numerous objections of the plaintiff to the defendants' title may conveniently be divided into three classes: first, those patent upon the face of the assessment rolls; secondly, those arising out of the extrinsic evidence of witnesses, and thirdly, those made to the returns of the taxes to the comptroller under which the lot was sold. It is the duty of the court to examine them in detail.

The taxes stand on all the rolls assessed on lot 54, town 1, range 3; and for the year 1856, one is a highway tax for $3.30, and one a State and county tax for $3.44; for the year 1858 the tax is a State and county tax for $8.46, and for 1860 the tax is a State and county tax for $8.16.

It is objected to the highway tax (on the rolls of 1856) that it is placed in the assessment roll *back* of the supervisors' warrant and is not covered by such warrant; and that it is *back* of the assessors' affidavit and not verified by such affidavit, and that there is no indication of the *tract* in which the assessed lot is situated. The supervisors' warrant cannot in any case refer to or command the collection of any tax whatever levied on the land of non-residents. The warrant must conform to the statute, commanding the collector to collect from the several *persons named* in the assessment roll, the several sums mentioned in the last column of such roll; opposite to *their respective names, etc.* (1 R. S. 396, § 37). It is true any person owning non-resident taxed lands may pay such tax voluntarily to the collector. So may he pay the same to the county treasurer before the latter makes his return to the comptroller. Id. 397, §§ 1, 8, 9, 10, 13; id. 403, § 28, copied in § 7, chap. 427, Laws of 1855; 1 R. S. 405, § 43, copied in § 22, same act of 1855. Such payments cannot, however, be enforced either by the county

treasurer or the town collector, nor does the warrant command it. There is no statute that requires the warrant of the supervisors to be either *back* or *forward* of the list of non-resident lands. The warrant is to be *annexed* to the assessment roll (1 R. S. 396, § 37). This objection is not tenable.

The next objection that this highway tax is *back* of the assessors' affidavit verifying the roll, and is not verified by such affidavit must also fail, for the reason that highway taxes on lands of non-residents are not assessed, nor put on the rolls or valued or verified by the assessors. The commissioners of highways make this assessment, valuing the land according to the valuation of the preceding year's assessment roll. 1 R. S. 505, §§ 19, 22 ; *Trustees of Angelica* v. *Morse*, 56 Barb. 380. Or if the land was omitted from the last assessment roll, the commissioners make an original assessment of their own Laws of 1837, chap. 431, § 6. The commissioners file with the town clerk a list of such lands so taxed. 1 R. S. 506, § 24. Copies of such lists go to the overseers of highways whose districts include the lands (id., § 25), and in default of being worked out or paid, the overseer makes return with his affidavit to the supervisor of the town (id. 511, § 47), and the supervisor lays the same before the board of supervisors (id., § 49), and the board of supervisors levies the amount on the lands so returned to be collected like other non-resident taxes (id., § 50). When the assessors for the year 1856 had completed and verified the assessment roll, this highway tax was not on it. The board of supervisors put it on after the roll had passed beyond the control of the assessors. The assessors could not verify a thing not in existence ; what they were called on to verify was the roll as they made it, not as another body should afterward make it.

Plaintiff's next objection to this highway tax is that there is no indication of the *tract* in which the lot is situated. By the public statutes organizing and bounding the counties and towns of the State, it appears that the town of Portville, in Cattaraugus county, is a part of the territory known as the Holland Land Company's lands, these lands being designated by name in the various boundaries. These statutes show the townships and ranges into which such lands are divided. To designate land in Portville as being in a township and range is to designate and name a *tract* of land of which the court and all persons take notice. These tracts bounded by the exterior lines of intersecting townships and ranges are accu-

rately ascertained, and are the only tracts subdivided into lots. The designation of the premises in question as lot 54, town 1, range 3, on the assessment roll of the town of Portville, indicates the tract and gives all necessary particulars required by law. 1 R. S. 391, §§ 12, 13. This does not conflict with *Hubbell* v. *Weldon*, Hill & Denio, 139. In a case subsequent to that (*Dike* v. *Lewis*, 2 Barb. 347) the court say: " The number of the lot, if that can be ascertained, is the only designation which by law is made necessary, as to lands not occupied."

Moreover, there is a page of the roll headed, " List of lands belonging to non-residents in township No. 1, range 3, formerly known as the Holland Land Company's lands," and under such heading is a list of lands with valuation, etc., including this lot 54, town 1, range 3, assessed for the State and county tax. This list is continued on the next page, which is headed, " List of lands situate in township No. 2, range 3 of the before-mentioned lands." On the sixth subsequent page follows, under a heading that reads, " Non-resident highway district No. 10," a list of lands in towns 1 and 2, range 3 — ten lots in all; and on the next page headed, " Non-resident Highway District No. 6," is a list of lots in town 1, range 3, including this lot 54. No other assessment or list of land intervenes between the lands assessed as Holland Land Company's lands, so called, and the assessment for these highway taxes. The designation of " Holland Land Company's lands " may well apply to the whole, especially as this lot 54, town 1, range 3, is found in both places. A case referred to in Blackwell on Tax Titles, is analogous, p. 133, *note*, citing *Patten* v. *Green*, 13 Cal. 325 : " An assessment on balance of land on Ranche A, 10,090 acres at $4 per acre, $40,360, was held valid, it appearing by the assessment roll that the rest of the ranche was assessed in lots as comprehended within the plat of the town, some of which lots were assessed to the same owner." In the present case no owner is assessed in either place, but the same lot is assessed as non-resident in two places, contiguous as before mentioned under one heading, namely, the " Holland Land Company's lands " ; and no other name or designation of a different tract comes between the two. The objection cannot prevail.

Plaintiff's next objection relating to the assessment on the roll of 1856 for the State and county tax, is that the assessment of the lot is *back* of the assessors' affidavit of verification, and is not

covered by it. The roll begins with an alphabetical list of persons assessed by name — twenty-two pages; on the next page is written the assessors' affidavit; and on the *back side* of the same leaf is the assessment of this lot.

The criticism is that the affidavit following the wording of the statute reads: "We," etc., "do swear," etc., "we have set down in the foregoing assessment roll," etc. (Laws of 1851, chap. 176, § 8.) "Foregoing," says the counsel, "applies only to what precedes the affidavit, whereas the assessment of lot 54 follows the affidavit." This is but a partial statement, and attempts to divide what is indivisible. The affidavit does not say "the *foregoing part* of the assessment roll," but "the *foregoing assessment roll*" — that is, the whole roll is included — not a part of it only. Most of the listing does in fact precede the affidavit, so that the affidavit by verifying the roll as a whole, and not merely a fragmentary part of it, covers, includes and verifies the whole roll as it stood when the affidavit was made, although a minor part of the assessment extends further back than the page containing the affidavit. This assessment of lot 54 is, however, on the same leaf, the same identical piece of paper on which the affidavit is written. Besides, the statute calls and deems this document a "roll," "an assessment roll." What is strictly and technically a *roll?* "A schedule of parchment which may be turned up with the hand in the form of a pipe or tube. Sheet to sheet tacked together in such manner that the whole length might be wound up together in the form of spiral rolls." (1 Bouvier's Law Dic., word, "Roll.") Wind up this assessment roll in that style and every thing in it *precedes* the assessors' affidavit. It is ball-like "*in se ipso totus teres atque rotundus.*" The statute does not prescribe on what part of the roll the affidavit shall be; it says the "oath shall be written on said roll." Laws 1851, chap. 176, § 8. The objection must be overruled.

Plaintiff's next objection is that this affidavit is made by two assessors only, no reason appearing why the third assessor did not join. A majority of the assessors may act without the third, both in making and verifying the roll. This appears by the language of the statute: "When the assessors, *or a majority* of them, shall have completed their roll, they shall severally make oath," etc. Laws 1851, chap. 176, § 8. "If any assessor shall neglect, or from any cause omit to perform his duties, the other assessors, or either of them, of the town or ward, shall perform such duties, etc. 1 R. S. 394, § 30.

The special particularity of these statutes takes the case out of the general rule applicable, where a power, authority or duty is confided by law to three or more persons. 2 R. S. 555, § 27. But even under the general rule, where the names of a majority appear, the presumption is that all acted. *Doughty* v. *Hope,* 3 Denio, 252–253. The court in that case remark the distinction where the statute does, and where it does not contain a provision that a majority may act. And so does CHURCH, C. J., in *People* v. *Nostrand,* 46 N. Y. 383. The provisions of the statute relating to assessors are very special, that the other assessors or either of them shall perform the duties of the one neglecting or omitting to perform; and see *Stewart* v. *Wallis,* 30 Barb. 347, making the distinction where special provision is made, per W. P. ALLEN, J. From the face of the affidavit, the presumption would be that all the assessors acted, although but two assessors verify; and by the statute the roll and the affidavit are good if only the two did act.

There is a further objection that the assessors have not certified to the supervisors with their assessment roll the name of the non-acting assessor, with the cause of his omission to act. 1 R. S. 394, § 30. The statute, as before observed, shows that the omission of one assessor to act does not invalidate the assessment, as in such case the other assessors (or either of them) are required to do the duties of the one neglecting. The object, and the whole object of this provision requiring assessors to certify such an omission to the board of supervisors appears by another section. 1 R. S. 419, § 2. It is to enable the supervisors to transmit to the comptroller the name and place of abode of the delinquent, so that the comptroller may give notice to the district attorney, to the end that the penalty (if incurred) may be enforced. The statute does not say that the certificate shall be *on* or *in* the assessors' roll, or *attached to it.* If the certificate is sent at the same time contemporaneously with the roll, the statute is satisfied. It is then certified with the assessment roll.

But even if such certificate were held to be necessary to be written on the roll, it would be presumed in this case to have been so written, because on the roll produced two entire leaves next preceding the last leaf of the roll have been torn out, leaving short stubs at the base. We are required to presume every thing to have been done necessary to be done, "from and including the assessment of the land," in favor of the title under the comptrol-

ler's deed; and this mutilated roll cannot overcome the legal presumption that this certificate was on it, where no proof whatever is offered on the subject. There is nothing in the decision of the commission of appeals in *Bellinger* v. *Gray*, 51 N. Y. 610, in conflict with what has been said on this point.

An objection is made to the assessment of 1858, that the tract in which this lot is has not been named. The lot is assessed as being "lot 54, town 1, range 3, 150 acres." For reasons already given, this is held sufficient.

The first class of objections being disposed of, the second is to be considered, consisting of objections arising out of the extrinsic evidence of witnesses. The plaintiff has given some testimony as to a search among the papers in the town clerk's office, and the papers in charge of the clerk of the board of supervisors, with the view of showing that the list of non-resident lands, directed by the statute to be made by the commissioners of highways, and filed with the town clerk apportioning the highway labor, was not made and filed by them; and that the return to be made by the overseer of highways, with his affidavit, to the supervisors, and by the latter laid before the board of supervisors, was not made; also that notice was not given or posted by the overseer as the statute directs.

These transactions were more than seventeen years before the trial. After so many annual elections and changes of all these officers, including town clerks and clerks of boards of supervisors, the singularity would have been if these papers had been found. A paper, however, was discovered filed in the town clerk's office, May 6, 1856, containing a list of non-resident lands assessed for highway labor, among which is this "lot 54, town 1, range 3, 150 acres," assessed to five and one-half days' labor at $3.44. To this is attached a warrant of the commissioners of highways directed to the overseer of district No. 6. The warrant is a printed form, and gives explicit directions to the overseer to notify the agent, etc., or to affix a written notice on the outer door of the place where the last town meeting was held, etc. The length of the notice to be given, and all other particulars are specified in terms such as the statute requires on the same paper, and at its head is also a printed form instructing the overseer as to his duties in making return to the warrant under oath, on or before the 1st day of October, and telling him that blanks for such return will be found with the supervisor or town clerk with an affidavit thereon.

This tends pretty strongly to show that all the officers connected with this business were aware of the duties enjoined by statute.

The further fact that this list is copied *in extenso* by the board of supervisors on the assessment roll of the same year carries further conviction or inference that a return was made to the supervisors. Where else did the supervisors procure these lists of taxes? The list and warrant of the commissioners is indorsed " copy," showing there was an original, and such original is the identical paper which should have been returned to the board of supervisors. It appears that the search in the town clerk's office was made not only after the lapse of so many years, but principally by persons adverse or in the interest of those adverse to the tax title, not over anxious for the preservation of the muniments of that title. The evidence falls far short of disproving the presumption that the overseer posted a proper notice and made a proper return. It also discloses that one of the assessors for the year 1856 was sick and unable to attend to his duties. It is presumed he had notice of the meeting and action of his associates, nothing going to show he was not notified. Taking all the oral testimony into consideration, with the proofs in writing, the statutory presumption in favor of the comptroller's deed stands unaffected.

This brings us to the third class of plaintiff's objections — that is, those made to the returns of the taxes to the comptroller under which lot 54 was sold. The plaintiff claims that the taxes returned were returned for too large an amount, not corresponding with the sums assessed on the rolls. The returns required to be made to the comptroller, consist of the affidavit of the town collector and the certificate of the county treasurer in the manner specified in the statutes. 1 R. S. 399, § 10; id. 402, § 26. This latter section seems unaltered through the subsequent acts. Laws 1850, chap. 298, § 4; Laws 1855, chap. 427, § 4. In the acts of 1850 and 1855, an additional clause was inserted requiring collectors to return and deposit with the county treasurers the original rolls. In other respects the twenty-sixth section has been copied in the acts referred to. In effect, therefore, the portions of section 26, so copied, are to be considered as having been in force since the Revised Statutes. *Ely* v. *Holton*, 15 N. Y. 598, 599. By an act, subsequent to the Revised Statutes, the collector is required to make *an addition* to the tax on the roll : " Whenever any collector shall

make returns to the county treasurer for any unpaid tax, he shall add to the several sums so returned by him *five per cent*, which shall go to the credit of the county, and be collected with said unpaid tax." Laws 1847, chap. 455, § 16.

Five per cent added to the highway tax makes it $3.46, as returned. Five per cent added to the State and county tax of 1856 makes it $3.61 as returned. Five per cent to the tax of 1858 makes it $8.88, three cents less than as returned; it was returned for $8.91. Five per cent to the tax of 1860 makes it $8.56, five cents less than as returned; it was returned for $8.61. It appears, therefore, that for the two taxes of 1856, the returns were for the proper amounts; but that the return for the year 1858 was for *three cents* too much, and for the year 1860, *five cents* too much.

Some other provisions of the statutes relating to the additions to the tax standing on the assessment roll may here be considered. From the first day of August following the year in which a tax is laid, the tax remaining unpaid draws interest *yearly* at the rate of ten per cent. Laws 1855, chap. 427, § 26. The comptroller is to sell for tax, interest and charges. Id., § 44. The expenses for printing lists and transmitting, and for' publishing notices of sale, are charged on the land and apportioned by the comptroller. Id., § 37. "An equal part of such expenses shall be added to the taxes, interest and other charges, on each parcel of land out of which sales are made." Id., § 86. All these are additions to the original tax.

If the collector's mistake of three or five cents, in his addition which the law requires him to make, is fatal, so would be a like error of the comptroller, in adding expenses, interest and charges. The apportionment by the comptroller in a case like that of the Buffalo Reservation (*Fellows* v. *Denniston*, 23 N. Y. 420) would present a miracle of accurate figuring if not a single lot should be found charged three or five or eight cents more than a mathematically equal amount. In *Thorn* v. *Nott*, 1 N. Y. Sup. Addenda, 22, it is said, the fact that the total footing up of the separate assessments on the tax roll was $7 more than the amount directed to be levied did not invalidate the tax. There was, probably, an addition to all the taxes in the school district, and an excess greater on any parcel of 150 acres than we find in the present instance.

The excess here is less than in any of the cases referred to in Blackwell on Tax Titles, 159, 160. What the extra amount was in

*Ritter* v. *Worth*, 1 N. Y. Sup. 406, does not appear.  By chap.
338, Laws 1858, a "legal irregularity" in assessments in the city
of New York, or "in proceedings to collect the same," being
alleged and proved, required the assessment to be vacated.  The
general term of this court refused to vacate such an assessment,
which illegally included two per cent for making the assessment,
on the ground that the amount was "very small."  In the matter
of *Lewis* v. *Mayor of New York*, 35 How. 162, 188–189, by look-
ing at page 164, it appears the assessment on the lot there was
$1,324, and the illegal addition $26.48.  Mr. Blackwell in his work
on Tax Titles, says that in some of the States the power
to sell land for the non-payment of taxes does not arise until
the delinquency of the owner has been judicially ascertained
(pp. 26, 183).  There is a judgment and a precept for the
sale.  This author gives the following instance of a variance
between such judgment and precept : "A material variance between
the precept and judgment upon which it is based is fatal to its
validity.  Thus in *Pitkin* v. *Yaw*, 13 Ill. 251, where the judgment
was for ninety-nine cents, and the precept recited a judgment for
$1.25, it was held to be a material, and therefore a fatal variance.
The precept described a judgment more than one-fourth larger than
the one actually rendered.  Trifling variances may be disregarded,
but one which destroys the legal identity of the proceedings cannot
be sustained."  Id. 209.

Broom in his Legal Maxims (p. 138) says the maxim "*De
minimis non curat lex*" has been applied to support a rate in the
assessment of which there were some comparatively trifling omis-
sions of established forms.  It was also applied to the sum of two
dollars in an application to compel the satisfaction of a judgment
and set aside an execution.  *Bergen* v. *Boerum*, 2 Caines, 258.
So in a usury case where fifty-four cents was recorded as a dollar.
*Conger* v. *Tradesmans' Bank*, Hill & Denio, 35.  In the redemp-
tion of lands sold on execution, a strictly statutory proceeding,
the sheriff acts under a special authority, and has no power to
dispense with any of its requirements.  *People* v. *Covell*, 18 Wend.
598.  It is somewhat analogous to the present case regarding the
strictness with which the statute must be followed.  Yet an error
of ten cents was overlooked in *Ex parte Becker*, 4 Hill, 613 ; Judge
BRONSON applied the maxim in that case ; and so did PAIGE, J.,
in *Hall* v. *Fisher*, 9 Barb. 17, where the mistake was thirty cents ;

and see *Colman* v. *Anderson*, 10 Mass. 115.   The plaintiff in his complaint sets out in detail the errors of which he complains and on which he founds his action, specifying all the objections above noticed, except this of an excess in the return above the actual taxes, from which I conclude he did not deem this trifling sum of excess one of importance or worthy of mention.   The objection however was raised upon the trial, and has been carefully examined. My conclusion is that the trifling or nominal sum of three cents in one return, and five cents in another, does not invalidate the title acquired under the comptroller's sale and conveyance.   All the plaintiff's objections are accordingly overruled.

It follows that the defendant's title must be held good, and the plaintiff's title invalid ; and the complaint is dismissed, with costs.

*Judgment affirmed.*