Upon the whole case, I am of the opinion that the order of the General Term, directing judgment for $1,000, be reversed, with costs, and the judgment be entered upon the verdict of the jury, with costs.

All concur.

Judgment reversed, and judgment ordered for the plaintiff for $21,649.27, and interest from the rendition of the verdict.

NOTE. — As to the *protection* which this act of 1855 affords to innkeepers, see *Hyatt* v. *Taylor* (3 Hand, 258), where it is decided, in giving construction to a statute of the State of New Jersey substantially the same in effect as our own, that the innkeeper who complies with the provisions of the act on his part is not liable for the loss of *any* money, jewels or ornaments, *not* deposited in the safe. — REPORTER.

THE BANK OF AUBURN, Respondent, *v.* LEWIS ROBERTS and others, Appellants.

Moneys awarded by the State as compensation to the owners of land for damages (depreciation in the value of a mill property, occasioned by the abandonment of a canal), are subject to the lien of a prior mortgage upon the land, to the extent of sufficient thereof to satisfy any deficiency upon foreclosure sale of the premises.

An act of the legislature, awarding to the owners of land, by name, dama-
ges in such amount " as shall be just and equitable," not exceeding a spe-
cified sum, and not to be paid until they shall have procured a release
to the State of all claims for damages to other property in the like situ-
ation, is to be construed, not as a gratuity to such owners, but as compen-
sation for the depreciated value of the land affected.
This is so, although the State does not take from the owners any property
or rights vested in them, but simply removes facilities for business, the
existence of which rendered their property more valuable.
The mortgagors being insolvent, and the security being impaired, the mort-
gage operates as an equitable assignment of the award, to the extent that
the land itself proves insufficient.

(Argued September 27; decided December 28, 1870.)

APPEAL from a judgment of the late General Term of the
seventh judicial district, affirming certain portions of the judg-
ment rendered on the report of a referee.   The case below is
reported in 45 Barb., 407.

The action was brought for the foreclosure of a mortgage,
and for other special relief substantially adjudged, as herein-
after stated.

It appeared, from the allegation in the complaint, not denied
by the answer, and by the findings of the referee who tried
the action, that the mortgage sought to be foreclosed bore date
the 1st day of May, 1855, and was executed by the defend-
ants, Edward Bradfield and Henry Roberts, to the plaintiff,
to secure the payment of the sum of $12,500, in six equal
annual installments, reckoned from the 1st day of April, 1855,
with interest also annually payable on the 1st day of April in
each year, until the whole was paid.   The mortgaged prem-
ises were situated in the town of Mentz, in Cayuga county,
and were described as commencing on a certain highway, and
thence running in different courses to the center of Owasco
creek, " thence northerly along the center of said creek, as it
winds and turns, to the State's blue line of the south bank of
the Erie canal, thence westerly along said blue line of the
south bank of said canal to the highway," etc., * * thence
to the place of beginning; together with all the further rights
and powers, and subject to all the reservations and provisions,

as described by the conveyance of these premises by the Bank of Auburn to the defendants, Edward Bradfield and Henry Roberts, of the same date with the mortgage, which was given to secure a part of the purchase-money of the premises, amounting to $25,000. When the mortgage was given, the mortgaged premises consisted of water-power, formed by a dam across the outlet of the Owasco lake, and by a raceway leading north therefrom, for over a mile in length, to a large stone flouring-mill, then situated on the premises, lying on the Erie canal at Port Byron, before its abandonment at that point by the State of New York, as hereinafter mentioned; and, when the mortgage was given, the only buildings on the premises, being about three acres, exclusive of the raceway and dam, consisted of the flouring-mill and a large stone warehouse or store-room for wheaten flour, and appurtenant and necessary for the use and enjoyment of the mill. The original cost of the buildings was over $30,000. The mill and store-house were consumed by fire, in the month of September, 1857, and all that remained thereof were the walls of stone, water-wheels, and the iron work in and about the buildings. The appellants, who were partners in business in the city of New York, as commission merchants, under the name and style of Lewis Roberts & Co., were subsequent mortgagees of the same premises, and had insured the buildings destroyed in the sum of $15,000 against loss or damage by fire, and received the insurance money. The mortgagors, at the time of the fire, and before the 1st day of April, 1858, became insolvent, and such insolvency was known to the firm of L. Roberts & Co., who did their business in New York, and were well acquainted with their affairs.

The legislature of this State, on the 2d day of April, 1858, passed an act, entitled " an act to provide for the abandonment of the old canal, lying west of the Owasco outlet, and east of lock No. 52, in the village of Port Byron, and the payment of damages caused by such abandonment," of which the following is a copy:

" SECTION 1. All that portion of the old Erie canal lying

west of Owasco outlet and east of lock No. 52, in the village of Port Byron, on the fulfillment of the provisions of the second section of this act, may be abandoned by the canal board; and the same shall not be subjected to the restrictions of the law of 1854, which prohibited the abandonment of the old canal through cities and incorporated villages.

" § 2. The canal board are authorized and required to settle upon the damages to the mill property of Edward Bradfield and Henry Roberts, situated upon said canal, caused by such abandonment, and to award to them such sum therefor as in the judgment of said board shall be just and equitable, not exceeding the sum of $8,000, which shall be paid by the treasurer, upon the warrant of the auditor, out of any moneys appropriated to the Erie canal enlargement, which shall be in full of all claims for damages to all other property situated on said old canal; and no portion of said damages shall be paid to said mill owners until they shall have procured a release to the State of all such damages, and the same shall be filed in the canal department. The aqueduct over the said Owasco outlet shall be left standing, to be used as a road bridge over said outlet, but not to be kept in repair by the State.

" § 3. This act shall take effect immediately."

The mill property mentioned in the act is the same property covered by the plaintiffs' mortgage, and they, on the 22d of April, notified the auditor of the canal department, by a notice in writing, of their mortgage and of the amount unpaid and owing thereon, and that, in consequence of the abandonment, the premises mortgaged had become an inadequate security for that amount, and they would claim that the damages to be awarded and paid under said act should first be applied in payment of their mortgage. The canal board afterward, and on the 28th day of May, 1858, passed a resolution in the following terms: " Resolved, that the portion of the old Erie canal lying west of the Owasco outlet, and east of lock No. 52, in the village of Port Byron be, and the same is hereby abandoned, and that there be paid to Edward

Bradfield and Henry Roberts, the sum of $8,000 in full, for the damages caused by such abandonment to the mill property situate upon said canal, in pursuance of chapter 87 of the Laws of 1858, the release mentioned in the act having been filed in the canal department."

The appellants allege in their answer that Henry Roberts, or Roberts & Bradfield, had paid or agreed to pay $1,700 for that release. A draft for $8,000, payable to the order of Edward Bradfield & Henry Roberts, was subsequently, and on the 31st day of May, 1858, delivered by the auditor to an agent of Bradfield & Roberts. Henry Roberts delivered the draft to Lewis Roberts & Co., indorsed by him with the names of Bradfield & Roberts. Lewis Roberts & Co. sold the draft through their broker and received the proceeds thereof. They had advanced to one David P. Wood and one Woolson the sum of $1,750, for which sum they held the draft as security, and they gave credit on their books to Bradfield & Roberts for an antecedent debt owing by them to L. Roberts & Co. While L. Roberts & Co. held the draft, or the proceeds thereof, George Underwood, on behalf of the plaintiffs, and as their agent and attorney, demanded the draft of them and at the same time offered to pay to them the sum ($1,750), which demand and offer were refused, and thereupon this action was brought.

Bradfield & Roberts had been copartners in business and the draft was issued to them for the damage to the mill and other property by reason of such abandonment of the Erie canal in Port Byron. Henry Roberts was not authorized by Edward Bradfield to indorse the draft with his name in connection with his own, but the indorsement was made by both payees' names, and the draft, so indorsed, was delivered to D. P. Wood as security for the $1,750 coming to him and Woolson, and Wood held it accordingly before and at the time when the draft was first produced, shown or offered to L. Roberts & Co.

They did not purchase the draft, but they advanced the $1,750, as above stated, and placed the draft in the hands of

a broker for sale. The broker made the sale and the proceeds came to L. Roberts & Co.

The referee found that there was due and unpaid to the plaintiffs on their bond and mortgage, at the date of his report (November 12th, 1862), the sum of $11,609.72; and in his report he found as conclusions of law:

1st. That the plaintiff was entitled to the ordinary decree of foreclosure and sale of the mortgaged premises, and a judgment against the mortgagors personally, for any deficiency of the proceeds of the sale to pay the decree with interest and costs.

2d. That the plaintiff had an equitable lien upon the draft and its proceeds, to satisfy any deficiency upon a sale of the mortgaged premises to pay the amount due thereon, and had a right to follow said draft and proceeds in the hands of the defendants, Lewis Roberts & Co., subject to their advances thereon to pay Wood & Woolson the sum of $1,750, and that, in addition to the ordinary decree of sale, the plaintiffs were entitled to a judgment, that the defendants, Lewis Roberts, Addison F. Roberts and Gideon W. Burbank pay any deficiency upon said sale to the amount of said draft and interest, less the $1,750 advanced thereon by them.

He thereupon directed judgment for the plaintiff accordingly, with costs against all of the defendants, except the defendant Benton.

The appellants except to the whole of the second conclusion of law, and also separately to the part thereof, declaring that the plaintiffs were entitled to judgment for any deficiency to the amount of said draft and interest, less $1,750, instead of the amount of the proceeds thereof (which, as they claim, appeared by the evidence to have been $4,780, June 4th, 1858), less their advances $1,700. Upon the settlement of the case for review on appeal, the referee has found the following additional conclusions of law:

3d. The mortgage covered and included nothing but the land described, and the water rights described and things then legally appurtenant to the described premises or mill property.

4th. The Erie canal was in a limited sense appurtenant to the mill property.

5th. It had never been an appurtenance by patent nor by grant, nor by prescription, nor by adverse possession, but it was directly necessary to the full enjoyment of the mill property.

6th. The change in the canal did not take away any estate, property vested or passed by the mortgage, but injured and impaired the value of the mortgaged premises.

Judgment was entered in accordance with the directions contained in the report of the referee, and the defendants, Lewis Roberts, Addison F. Roberts and Gideon W. Burbank, appealed to the General Term from so much thereof as included the portions of the referee's conclusions of law excepted to as above mentioned. Upon such appeal the judgment was affirmed with costs. The same defendants have appealed from the judgment of affirmance.

*Charles Tracy*, for the appellants, cited *Rexford* v. *Knight* (15 Barb., 643); *Wolf* v. *Frost* (4 Sandf., Ch. 72); *Gould* v. *Hudson R. R.* (6 N. Y., 522); Angell on Watercourses, 176, §§ 165, 166; Sheppard's Touchstone, 89; *LeRoy* v. *Platt* (4 Paige, 77, 82); *Gardner* v. *Trustees of Newburgh* (2 John., Ch. 162); *Radcliff's Ex.* v. *Mayor of Brooklyn* (4 N. Y., 195, 206); *Ex parte Miller* (2 Hill, 418); *Munsell* v. *Lewis* (2 Den., 226); *Carter* v. *Rocket* (8 Paige, 437); *Astor* v. *Turner* (11 id., 436); *Poole* v. *Adams* (33 Law Jour., part 1, p. 639); *Columbian Insurance Company* v. *Lawrence* (10 Peters, 507); *Vandegraff* v. *Midlock* (3 Porter, Ala., 389); *Wyman* v. *Prosser* (36 Barb., 368); *Mabbett* v. *White* (2 Kern., 442).

*James R. Cox*, for the respondent, cited and discussed *Munsell* v. *Lewis, supra; Buel* v. *Boughton* (2 Den., 91); *Moses* v. *McFarlan* (2 Burr., 1005, 1012); *Norton* v. *Coons* (3 Den., 130); 4 Bos. & Pull., Day's ed., 263 note; 4 Comst., 69. He also cited, on the question of *bona fides*, 8 Cow.,

361, 374; 1 John., Ch. 302; 3 id., 345; 10 Peters., 170, 211, 212; 6 .Seld., 509, 528; 5 id., 548; Story's Plead., §§ 662, 806, 604a.

LOTT, Ch. Com.　It appears from the finding of facts, that the mortgagors acquired their title to the property covered by and included in the mortgage sought to be foreclosed, from the Bank of Auburn, the plaintiff, under and by virtue of a conveyance bearing date the 1st day of May, 1855, and that the said mortgage was executed at the same time to secure a part of the purchase money or consideration therefor. An abstract of that conveyance among the exhibits of the case shows that among the further and other rights referred to in the mortgage and covered thereby were the following: "All and singular the water rights, rights, privileges and easements in any and every way pertaining to said premises, and owned by the said parties of the first part, or to which they are in any way entitled or privileged in respect to the premises hereby granted, together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining."　At the time of the execution of the said conveyance and mortgage there was a statute of the State in force (ch. 329 of the Laws of 1854), relating to the enlargement of the Erie and other canals, the seventh section thereof (which directed that the work for such enlargement should be put under contract by the canal board and progress to completion so as to bring the said several improvements to use), contained this provision "but nothing in this section shall authorize the said board to abandon the present canal through cities or incorporated villages where an independent canal may be deemed advisable."

An act was subsequently passed (ch. 743 of the Laws of 1857), which, after confirming and establishing the location of certain sections of the enlarged Erie canal, and providing for the construction thereof on the north and independent line, and to bring the same into use in the spring of 1858, declared in the second section thereof, that all that portion of the old

Erie canal lying east of the Owasco outlet in the village of Port Byron might on the fulfillment of the provisions of the third section of the act be abandoned and filled up by the canal board, and that it should not be subject to the restrictions of the said law of 1854, above set forth, and also that the remaining portion of the old canal lying west of the said Owasco outlet should be excavated to the depth of the enlarged canal, and be kept in navigable condition. The said third section authorized and required the canal appraisers to make an appraisal of the damage caused by the depreciation and destruction of the value of the property situated upon or adjoining the old canal, which was so to be abandoned by the said provisions of the second section of the act, and to make a fair and equitable award of the amount of said damages respectively to each of the said owners of the said property, including land and buildings which were then and had been used for building purposes; and provision was then made for the payment of such damage.

The act of 2d April, 1858, set forth in the statement of facts (ch. 87 of the Laws of 1858), authorizing the abandonment of the portion lying west of the Owasco outlet and east of lock No. 52 in the said village, and providing for the payment of the damages caused thereby was passed.

That act clearly recognizes a right or claim to compensation by Edward Bradfield and Henry Roberts, and by other owners for damages to property situated on the old canal arising from or caused by the abandonment thereof, and also the necessity of a release by the latter before the money awarded under the act should be paid to Bradfield & Roberts. The third section of the act of 1857 (ch. 743), is based on the assumption that there will be a depreciation, and in some instances a destruction of the value of property situated upon and adjoining the old canal, resulting from or in consequence of its abandonment, and that the owners thereof are entitled to be compensated for the damages caused thereby, and both of those acts declare expressly that the abandonment may be made "on the fulfillment of the provisions" then

made for the appraisal or settlement and payment of such damages. They appear to recognize and treat the restrictions of the Laws of 1854 referred to therein, which prohibit the abandonment of the old canal through cities and incorporated villages, as a provision in the nature of a legislative assurance to the owners of land situated thereon or adjoining thereto, that they would not be deprived of the use thereof and consequently, that a valuable " *privilege* " was thereby secured to them, and it may be reasonably and fairly assumed that the parties to the conveyance and mortgage of the mortgaged premises contemplated, and had reference to that as one of the " privileges" granted thereby as above stated. While, therefore, it may be true as the referee states, in his conclusions of law, that the Erie canal has never been made appurtenant to said premises by patent nor by grant, nor by prescription, nor by adverse possession, and that a change thereof did not take away any estate or property vested, or passed by the mortgage, it was, nevertheless, as he also finds in a limited sense, appurtenant to the mill property, and directly necessary to its full enjoyment, and such change injured and impaired its value.

The object and intent of the act of 1858 was to give compensation for such deterioration in value, and the damage resulting therefrom, and the parties sustaining it, not as a gratuity, but in satisfaction and discharge of a claim conceded to be " just and equitable." Although Edward Bradfield and Henry Roberts, the mortgagors and legal owners of the property subject to the lien of the mortgage were named in the act, they were so named for the purpose of designating the property for which the canal board was authorized and required to settle, and award the damages thereto caused by the abandonment. Those were the only damages to be settled upon by them under the provisions of that act, and such special and particular designation was, therefore, proper, but no greater or different rights were intended to be given by reason of specifically naming those persons than a general provision directing an appraisal and award of damages to all the

owners of property depreciated in value, as was done under the act of 1857 (chap. 743), above referred to. An award in such case to " owners," would be construed to include mortgagees, and other incumbrancers and their rights would be protected, the object of the law being clearly to allow damages to the extent of the diminution in value of, and damage to the property itself, and such construction of the enactment as would give such owners the absolute right to the whole of the sum awarded, and exclude all persons having liens from all benefit therefrom, would be unreasonable, and cannot be properly given. Indeed, the provisions of the general law respecting the powers and duties of the canal board, and the commissioners of the canal fund (chap. 160 of the Laws of 1841, § 5) appeared to contemplate an award to owners, and provide for the protection of the incumbrancers and the distribution of the fund among the parties in interest. See also, *Stowe* v. *Tifft* (14 John. Rep., 463), and the comments of SELDEN, J., thereon in *Hitchcock* v. *The North Western Insurance Company* (26 N. Y., Rep., 68, etc.)

The views above expressed lead me to the conclusion, that the amount of the award in question must, in equity, be considered as an equivalent, and substitute for the deterioration in value of the property, and as a security for the mortgaged debt, and that the referee was right in declaring that the plaintiff had an equitable lien in the draft and its proceeds, and had a right to follow them to the hands of the appellants to the extent at least stated in his report, and in directing judgment to be entered by him. The only sum paid by the appellants, was the sum of $1,750 advanced by them to Daniel P. Wood, and one Woolson, which was allowed to them, and they gave credit for the balance on their books to the said mortgagor for an antecedent debt owing by them. They were not, therefore, *bona fide* holders of the draft beyond the amount so advanced. I see no ground for the reversal of the judgment appealed from. It must consequently be affirmed with costs.

LEONARD, C.   The act of the legislature in 1858 authorized and required the canal board to settle upon the damages to the *mill property*.   It is an acknowledgment of damages committed by the State to real property, by an unexpected alteration of the route of the Erie canal at that particular place.   The construction of the canal had drawn to it the investment of money in manufactures and buildings, based upon its permanency and advantages.   The owners are named in the act, and the award is directed to be made to *them*. These owners had previously mortgaged the mill property to the plaintiffs, to secure a large portion of the consideration money for its conveyance to them, and the change of the location of the canal has very considerably impaired the value of the security.   The damage to the mill property, referred to in the said act, has affected the interests of the mortgagees, by impairing their security, and to that extent, whatever it may be, their rights are injured.   The equitable interests of the plaintiff are prior to, and greater than the legal or equitable rights of the owners of the land, to the extent that their security has been impaired.   The State, admitting a liability for damages done to the *mill property*, directs an award to compensate such damages.   The sum awarded arises from, or grows out of the land, by reason of the injury which has diminished its value.   In equity it is the land itself.   It takes the place of the reduced value of the land.   A mortgage of land carries with it, in equity, a right to the accruing rents, when there has been a default, and the security is inadequate and the debtor insolvent.   (8 Paige, 565, and 10 Paige, 45.)   The court will appoint a receiver in such a case to hold the rents till the event is ascertained.   The mortgage is thus made to operate as an equitable assignment of the rents.   The application of this principle does not divert the money from the owners of the land.   It pays their debt, and benefits them to the same extent.   In my opinion, the mortgage carries with it the prior right to the damages awarded for an injury done to the freehold, whereby the security has been impaired, and the debtors, as in this case, are insolvent.   The mortgage

should be regarded as an equitable assignment of so much of the damages awarded as will be required to satisfy a deficiency which may arise on a foreclosure sale. The sum awarded should be considered as the land. The appellants, having parted with nothing except the sum paid to discharge the liens of Wood and Woolson, are entitled to protection against the rights of the plaintiffs as mortgagees, only to that extent.

The judgment should be affirmed with costs.

Judgment affirmed with costs.