(99 App. Div. 581)

BOLTON v. SEAMEN'S BANK FOR SAVINGS et al.

(Supreme Court, Appellate Division, Second Department. December 15, 1904.)

1. MORTGAGES—RIGHT OF MORTGAGEE TO AWARD IN CONDEMNATION PROCEEDINGS.

   Where the mortgage security is impaired by a change of the lines of the adjacent street by condemnation proceedings, the mortgagee is entitled to the award of damages for such change, so far as required to repair the impairment.

2. SAME—CONSTRUCTION OF CONTRACT.

   Landowners on a street, wishing legislation fixing a uniform court-yard line throughout the block, agreed with plaintiff, the owner of a corner lot, who was about to commence the erection of a building thereon, that, if he would withdraw his opposition to the proposed bill and place his building so as not to interfere with such line, the award to be made under the condemnation proceedings to be authorized by the bill should equal the sum of $4,000 over any assessment of benefits, and that to this end they would pay the difference between the balance of the award over the assessment and such sum. *Held* that, the purpose of the agreement being to change the attitude of plaintiff from opposition to advocacy of the proposed bill, the fund arising thereunder belonged to plaintiff, rather than to the mortgagee holding a mortgage on plaintiff's land.

Appeal from Special Term, Kings County.

Action by William C. Bolton against the Seamen's Bank for Savings and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Edward E. Sprague, for appellant Seamen's Bank for Savings.
Robert H. Wilson, for appellants Burr, Coombs & Wilson.
Andrew F. Van Thun, Jr., for respondent Bolton.

JENKS, J. The servitude was imposed by chapter 257, p. 458, of the Laws of 1899. The bank became a mortgagee first on February 28, 1899. If the servitude damaged the land, the security of the mortgagee was impaired, and any damages paid as compensation, plus the land thus burdened, represented the land before it was burdened. If the entire plot had been taken, the damages would have represented the security, and a mortgagee would have been first considered in the application thereof. The Bank of Auburn v. Roberts, 44 N. Y. 192; Utter v. Richmond, 112 N. Y. 610, 20 N. E. 554; Astor v. Hoyt, 5 Wend. 603; Matter of John and Cherry Streets, 19 Wend. 659. That is, if all of the land remaining free of any servitude, covered by the mortgage, could not produce

¶ 1. See Eminent Domain, vol. 18, Cent. Dig. §§ 417, 418.

the mortgage debt, then the mortgagee could resort to the award to make up any deficiency. Home Insurance Company v. Smith, 28 Hun, 296. If the entire strip, instead of being bound by a servitude, had been absolutely taken, and thereby the security of the mortgagee had been impaired, it would seem but logical that such impairment should first be considered in the application of the award. And the reason of the rule would extend it in a degree to a case where there was but a servitude imposed upon the land. The security was changed. In place of the land originally mortgaged, the mortgagee finally held it charged with the servitude. And the fact that there was an award for damages is evidence that the land was damaged, and, consequently, that the security was impaired. In King v. The Mayor, 102 N. Y. 171, 6 N. E. 395, the court, per Finch, J., held that the right to such damages accrued the instant a road, closed by proceedings, ceased to be a public highway, and that when they were paid they related back to the original debt which accrued at that time, being akin to damages in trespass or a wrongful taking, although the trespass is legalized by legislative authority, with such damages for compensation. When this land was taken, in the sense that whenever the owner was restricted from building outside of the line laid down by the act, the debt accrued, and the damages, when paid, related back to it. But whether the land was burdened by the statute ex proprio vigore, or only by the proceedings instituted under it, in either event the defendant bank was then a mortgagee. If the land was taken ex proprio vigore, it was an incumbrancer perforce of the mortgage of February 28th. If the land was taken only by the proceedings under the statute, then it was an incumbrancer with the mortgage of May 3, 1899, as well. So far as an award represented the impairment of the security, the mortgagee with his mortgage prior to the time of impairment would be entitled to the first application thereof, so far as it was required to repair the impairment. Authorities, supra. See, too, Platt v. Bright, 31 N. J. Eq. 81. The award belongs to the defendant bank, and the mortgagor cannot complain, as it is an application to his debt.

But the fund in court is not the award in the eye of the law, in that it represents the legal compensation to the landowner for the servitude. The landowners upon this block sought legislation which should assure a uniform courtyard line throughout the block. Mr. Burke, the owner of a corner lot upon the block, stood in their way; first, presumably, he could defeat the practical purpose of the bill, if it became a law, by beginning construction beyond the proposed line, and avail himself of the exception provided by section 2 of the bill; and, second, he was opposed to the bill. Therefore these owners agreed, in consideration of his commencement of construction within the proposed line, and his change from opposition to advocacy of the bill, that the award to be made under the condemnation authorized by the bill should equal the sum of $4,000 over any assessment for benefit, and that to this end they would pay the difference between the balance of award over assessment and such sum; and they further agreed that if such sum was not

produced by such law through the condemnation thereby authorized within one year from the time it took effect, then they would pay such sum. In return, they were to receive a paper enabling them to recoup themselves from the award, and a paper limiting the use of said land to the line. The agreement finally provides:

"The true intent and purpose being to cause that the said bill if enacted into law, shall within one year from the date it takes effect, produce for said Burke the sum of four thousand dollars and interest as aforesaid, and that the limitations or restrictions proposed by such bill shall be secured as to such land in case the said bill is enacted into law during the present year."

It is quite evident that the property owners were not seeking a courtyard covenant from Mr. Burke. They looked to the proposed statute to effect that restriction. The purpose of thus dealing with Mr. Burke was to prevent his frustration of the scheme, and to change his attitude from opposition to advocacy of the bill. The whole agreement is conditional upon the bill becoming a law, so as to effect their scheme of a uniform court line. They took into consideration that there was to be an award, and the agreement was made conditional in that so much of the $4,000 as was gained from any award within one year should be credited as against their obligation, but they agreed that, if the award within a year did not produce this sum, they would pay such sum to Mr. Burke. It cannot be said that they underwrote the award in $4,000 to whomever it was payable, or that $4,000 represents the impairment of the land consequent upon the servitude. It is the sum which the property owners were willing to pay to Mr. Burke, the then owner of the property, that he should not defeat the bill by opposition or mar its scheme by construction.

. Mr. Burke was under no obligation to the mortgagee to oppose the bill or to stand at gaze. So far as the record shows, he was not guilty of any bad faith in the construction of his building within the proposed line. True, it was his ownership of the land which enabled him to strike this bargain, but he did not thereby impair the value of the land. In so far as the servitude impaired the land, the award represents compensation therefor. If he had made a covenant, it might be contended that it ran with the land (Winfield v. Henning, 21 N. J. Eq. 188), but he was not required to make such covenant, nor did he do so. The bill, so to speak, was to impose the covenant if it became a law, and he simply agreed neither to oppose its passage nor to thwart its purpose.

The fallacy of the defendant is in regarding the money resultant from the agreement as if the award, when one represents what the property owners were willing to pay Burke to secure their object, and the other represents the compensation for the impairment by the servitude. The only connection between the two is that the property owners did not intend that Burke should receive a double payment from the award and from them, and hence they provided for their reimbursement from the award, on the supposition that Burke, as the owner, would finally be entitled to receive that award.

The judgment should be affirmed, with costs. All concur.